Instrument        Volume Page
2008OU004820 OR      21    69'·

**PROBATE:**
STATE OF _South Carolina_____, COUNTY OF _Richland_____ } ss

Personally appeared before me the undersigned witness who, being duly sworn, deposed and said that (s)he saw the Mortgagor (and each Mortgagor if more than one) sign, seal and deliver the foregoing Mortgage and that (s)he, together with the other witness whose name appears as a witness, witnessed the execution thereof.

Sworn to and subscribed before me this ___22nd___ day

of _August, 2008_____

_Robert R. Borsevan_____
Notary Public for South Carolina

My commission expires _July 11, 2011____

Instrument      Volume Page
2008H0004820 OR      21    70

## Exhibit A

All that certain piece, parcel or lot of land lying, being and situate in the State of South Carolina, County of Cherokee, being known and designated as Lot No 111, Vermont Drive of Connecticut Park Subdivision, as shown on a plat dated January 26, 1972, and recorded in the Office of the Clerk of Court for Cherokee County, South Carolina in Deed Book 8-D at Page 127

This being the same property conveyed to MND Properties, LLC by Clerk's Deed of Foreclosure dated January 11, 2007 and recorded in the Clerk of Court for Cherokee County on January 22, 2007 in Volume 4 at Page 458 – 459

TMS#098-07-00-054
Property Address: 304 Vermont Drive, Gaffney, SC 29340

2008044515 FILED, RECORDED, INDEXED
2008-08-27 11:14:17:363
REC FEE: $16.00   ST FEE: $0.00
CO FEE: $0.00   Pages: 10
Lexington County R.O.D. Debra M. Sumter
MORTGAGE Bk:Pg 13113:279

This document was prepared by (name, address, phone)
Congaree State Bank
P O Box 3018
West Columbia, SC 29171

———— State of South Carolina ————          ———— Space Above This Line For Recording Data ————

# REAL ESTATE MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES** The date of this Mortgage is ___08/23/2008___ and the parties and their addresses are as follows:

   MORTGAGOR    M N D Properties, LLC
   2131 Park Street
   Columbia, SC 29201-1111

   ☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors

   LENDER:    Congaree State Bank
   P.O. Box 3018
   West Columbia, SC 29171

2. **MORTGAGE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:
   **see attached exhibit "A"**

The property is located in _____ Lexington _____ at 4 properties
                                        (County)

_____ , _____ Columbia _____ , South Carolina __29201__
           (Address)                            (City)                                    (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

SOUTH CAROLINA   AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)          (page 1 of 8)
ExperÈ © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RES-SC 1/21/2003

3   **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Mortgage at any one time shall not exceed $ 1,400,000.00 _____ This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Mortgage and does not apply to advances (or interest accrued on such advances) made under the terms of this Mortgage to protect Lender's security and to perform any of the covenants contained in this Mortgage  Interest under the Note will be deferred, accrued or capitalized, however, Mortgagee shall not be required to defer, accrue or capitalize any interest except as provided in the Note  Future advances are contemplated and, along with other future obligations, are secured by this Mortgage even though all or part may not yet be advanced. Nothing in this Mortgage, however, shall constitute a commitment to make additional or future loans or advances in any amount  Any such commitment would need to be agreed to in a seperate writing

4   **SECURED DEBT DEFINED**  The term "Secured Debt" includes, but is not limited to, the following
   A.  The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e g , borrower's name, note amount, interest rate, maturity date).*

      One note of even date in the principal amount of 700,000.00 with final payment
      due 03/21/2013

   B   All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt
   C   All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
   D.  All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt
   E   Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt

   If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others  This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Mortgage or if Lender fails to give any required notice of the right of rescission

5   **PAYMENTS**  Mortgagor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Mortgage.

6   **WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record

7.  **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due  Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Mortgage  Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Mortgagor may have against parties who supply labor or materials to improve or maintain the Property

8.  **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Mortgage, Mortgagor agrees·
   A   To make all payments when due and to perform or comply with all covenants
   B   To promptly deliver to Lender any notices that Mortgagor receives from the holder
   C   Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing

9.  **DUE ON SALE OR ENCUMBRANCE** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property  However, if the Property includes Mortgagor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R  591), as applicable  For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property  This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Mortgage is released.

*(page 2 of 8)*

**10 TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Mortgagor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Mortgage.

**11 ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:

    **A**   Mortgagor is an entity which is duly organized and validly existing in the Mortgagor's state of incorporation (or organization). Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.

    **B**   The execution, delivery and performance of this Mortgage by Mortgagor and the obligation evidenced by the Evidence of Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.

    **C**   Other than disclosed in writing Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

**12 PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will give Lender prompt notice of any loss or damage to the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Mortgagor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Mortgagor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Mortgage. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**13 AUTHORITY TO PERFORM.** If Mortgagor fails to perform any of Mortgagor's duties under this Mortgage, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Mortgage, Lender may, without notice, perform the duties or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Mortgage. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

**14. ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property):

    **A**   Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).

    **B**   Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive

Exper�� ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-SC 1/31/2003

(page 3 of 4)

any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Mortgagor will be in default if any of the following occur.
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Mortgage, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C F R Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Mortgage in a manner provided by law if this Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Mortgage and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage. Mortgagor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Mortgage and Mortgagor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U S C 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has

characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Mortgagor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing

A  No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law

B  Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property

C  Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property, or (2) there is a violation of any Environmental Law concerning the Property In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property, or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings

E  Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F  There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing

G  Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with

H  Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property, (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law

I  Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender The choice of the environmental engineer who will perform such audit is subject to Lender's approval

J  Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain, and (2) at Lender's discretion, Lender may release this Mortgage and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Mortgage without prejudice to any of Lender's rights under this Mortgage.

L  Notwithstanding any of the language contained in this Mortgage to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Mortgage regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived

**20. CONDEMNATION.** Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Mortgagor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property Such proceeds shall be considered payments and will be applied as provided in this Mortgage. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document,

**21. INSURANCE.** Mortgagor agrees to maintain insurance as follows

A. Mortgagor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires  What Lender requires pursuant to the preceding three sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Mortgage

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance  Lender shall have the right to hold the policies and renewals  If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices  Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender  Lender may make proof of loss if not made immediately by Mortgagor.

Experi ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form ABCO-RESI-SC 1/21/2003

Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition

B   Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property

C   Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender

22 **NO ESCROW FOR TAXES AND INSURANCE** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Mortgagor warrants that all financial statements and information Mortgagor provides to Lender are, or will be, accurate, correct, and complete. Mortgagor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Mortgage and Lender's lien status on the Property. If Mortgagor fails to do so, Lender may sign, deliver, and file such documents or certificates in Mortgagor's name and Mortgagor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS, SUCCESSORS AND ASSIGNS BOUND.** All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Mortgage may extend, modify or make any change in the terms of this Mortgage or the Evidence of Debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Mortgage. The duties and benefits of this Mortgage shall bind and benefit the successors and assigns of Mortgagor and Lender

If this Mortgage secures a guaranty between Lender and Mortgagor and does not directly secure the obligation which is guarantied, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Mortgage is complete and fully integrated. This Mortgage may not be amended or modified by oral agreement. Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Mortgage cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Mortgage. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Mortgage are for convenience only and are not to be used to interpret or define the terms of this Mortgage. Time is of the essence in this Mortgage

26 **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Mortgage, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors

27 **WAIVER OF HOMESTEAD** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

28 **U C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Mortgage.

☐ **Construction Loan** This Mortgage secures an obligation incurred for the construction of an improvement on the Property

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber, Minerals; Rents, Issues and Profits** Mortgagor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property")

(page 6 of 8)

Exceed™ © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-REM-SC  1/21/2003

☐ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Mortgage also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Mortgage is sufficient as a financing statement.

29. **OTHER TERMS.** If checked, the following are applicable to this Mortgage:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Mortgage will remain in effect until released.

☒ **Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may, within thirty days after the sale of the mortgaged property, apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.

☐ **Separate Assignment.** The Mortgagor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Mortgage and in any attachments. Mortgagor also acknowledges receipt of a copy of this Mortgage on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated _____ .

Entity Name  M N D Properties, LLC _____     Entity Name _____

_____ 08/22/2008 (Seal)     _____ 08/22/2008 (Seal)
(Signature) Mary Nell Degenhart          (Date)         (Signature) William Degenhart          (Date)
member                                                                   member

Signed, Sealed and delivered in the presence of

_____                      _____
(Witness)                                                      (Witness)

☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors, signatures and acknowledgments

Exžmerž™ © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RES-SC 1/21/2003

**PROBATE:**
STATE OF _South Carolina_____, COUNTY OF _Richland_____ } ss

Personally appeared before me the undersigned witness who, being duly sworn, deposed and said that (s)he saw the Mortgagor (and each Mortgagor if more than one) sign, seal and deliver the foregoing Mortgage and that (s)he, together with the other witness whose name appears as a witness, witnessed the execution thereof.

Sworn to and subscribed before me this _____22nd_____ day

of _August, 2008_

_____ _____
Notary Public for South Carolina

My commission expires _____July 11, 2011_____

## Exhibit A

All that certain piece, parcel or lot of land with the improvements thereon, if any, situate, lying and being near the City or Irmo, in the County of Lexington, State of South Carolina, the same being shown as Lot 79 on a plat of The Rapids, Phase Two and Three by Belter and Associates, Inc dated November 20, 1996, revised January 7, 1997 and recorded in the Office of the Register of Deeds for Lexington County in plat slide 256 at page 10, and being further shown and delineated as a plat for Thomas Buchan and Maltee A. Buchan by Belter and Associates, Inc dated September 22, 1997 and recorded in the Office of the Register of Deeds for Lexington County in plat book 281 at 627 Reference being made to said plat which is incorporated herein by reference fo a more accurate and complete description, all measurements being a little more or less.

This being the same property conveyed to MND Properties, LLC by Deed of The Master in Equity for Lexington County recorded March 19, 2007 in the Office of the Register of Deeds for Lexington County in Book 11834 at page 345.

**TMS# 002764-01-079**
**Property Address: 603 Rapids Road Columbia, SC 29212.**

All that certain piece, parcel or lot of land, with improvements thereon, situate, lying and being in the County of Lexington, State of South Carolina, being shown and designated as Lot 11, Block "D", on a plat of Oak Grove Estates, prepared by McMillan Engineering Company, dated May 10, 1971, and recorded in the Office of the R.M.C for Lexington County in Plat Book "115-G" at Page 48, said lot having the following boundaries and measurements to-wit. On the North by Lot 10, Block "D", measuring thereon One Hundred Forty-Seven and Two-tenths (147 2') feet; On the East by the curve of Oak Ridge Lane, measuring thereon the aggregate distance of Sixty (60') feet, On the Southeast by Lot Twelve, Block "D" measuring thereon One Hundred Eighty-four and Seven-tenths (184 7') feet, On the South by Lot 19, Block "D", measuring thereon Ninety-four (94') feet, On the West by a portion of Lot 2, Block "D" and Lot 3, Block "D", measuring thereon for a total distance of One Hundred Thirty-five (135') feet; be all said measurements a little more or less

This being the same property conveyed to MND Properties, LLC by Deed of Maiden Lane Partnership recorded July 16, 2008 in the Office of the Register of Deeds for Lexington County in Deed Book 13032 at page 5

**TMS #. 804419-04-006**
**219 Oakridge Drive Lexington, SC 29072**

All that certain piece, parcel or tract of land, together with improvements thereon, situate, lying and being on the southeastern side of Pine Street, in the City of Cayce, in the County of Lexington, State of South Carolina, said lot being shown and designated as Lot 7, in Block A, as shown on a plat of Broadacres Addition prepared by Leslie L Finley dated November 11, 1957, and recorded in the Office of the R.M.C. for Lexington County in Plat Book 44-G at Page 29, and also being shown on a plat prepared for Mickey L and Deborah L Manns by Associated Engineers and Surveyors, Inc , dated July 3, 1979, and according to said Plat being bounded and measuring as follows, to-wit: On the Northwest by Pine Street, whereon it fronts and measures Seventy Four and 93/100 (74 93') feet, On the Northeast by Lot 8, Block A, whereon it measures One Hundred Fifty-Six and 2/10 (156.2) feet; On the Southeast by Lands now or formerly of Williams whereon it measures Seventy Five and 04/100 (75 04') feet; and on the Southwest by Lot 6 in Block A, whereon it measures One Hundred Fifty-Seven and 62/100 (157 62') feet; be all said measurements a little more or less This property is also shown and delineated on a Plat prepared for Mickey L and Deborah L Manns by Associated Engineers and Surveyors, Inc , dated July 3, 1979, and recorded in the Office of the RMC for Lexington County

This being the same property conveyed to MND Properties, LLC by Deed of Maiden Lane Partnership recorded July 16, 2008 in the Office of the Register of Deeds for Lexington County in Deed Book 13032 at page 1.

**TMS #: 005726-10-007**

Property Address: 1105 Pine Street Cayce, SC 29033

All that certain piece parcel or lot of land, with the improvements thereon, situate, located, lying and being in the County of Lexington, State of South Carolina, the same being shown and designated as Lot 29, containing 0 25 acres, more or less, on a plat prepared for Darleus D  Cox, Douglas E  Platt, Sr  RLS dated September 12, 1984, recorded in the RMC for Lexington County in Plat book 199-G at page 127, being more particularly shown and designated upon that certain plat prepared for Allen M  Jones by Douglas E  Platt, RLS dated February 15, 1996, recorded in the Office of the RMC for Lexington County in plat book 275 at page 286, and having the following boundaries and measurements  North by property N/F Cayce, whereon it measures (75 01') feet, East by Lot 28, whereon it measures (150 01') feet; South by Charlotte Avenue, whereon it measures (75 01') feet; West by Lot 30, whereon it measures (150 01') feet; all measurements being a little more or less,

This being the same property conveyed to MND Properties, LLC by Deed of Dabbie J  Rhodes recorded September 27, 2007 in the Office of the Register of Deeds for Lexington County in Book 12363 at page 179

TMS# 005727-07-033
Property Address: 1044 Charlotte Avenue, Cayce, SC 29033



Send the certified documents to:

**DEGENHART LAW FIRM**
2131 PARK STREET
COLUMBIA, SC 29201

*Ret: Degenhirt Law Firm, PA*
*2131 Park St.*
*Columbia, SC 29201-2139*

M-BK.01980 PG 0082

This document was prepared by (name, address, phone).
Congaree State Bank
P O  Box 3018
West Columbia, SC 29171

FILED  Aug 27, 2008   10 35:56 am
BOOK  01980
PAGE  0082 Thru  0090
INSTRUMENT # 2008004383

FILED
ORANGEBURG
COUNTY
GAIL LANEY
REGISTER
OF DEEDS

——— State of South Carolina ——————————— Space Above This Line For Recording Data ———————

# REAL ESTATE MORTGAGE
### (With Future Advance Clause)

1  **DATE AND PARTIES.** The date of this Mortgage is __08/22/2008_____ and the parties and their addresses are as follows

MORTGAGOR      M N D Properties, LLC
2131 Park Street
Columbia, SC 29201-1111

☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors

LENDER:      Congaree State Bank
P.O. Box 3018
West Columbia, SC 29171

2. **MORTGAGE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, conveys and mortgages to Lender the following described property
See attached exhibit "A"

The property is located in _____ __Orangeburg__ _____ at __321 Eastwood Circle__ ____
(County)

__Orangeburg__ , South Carolina __29115__
(Address)                                    (City)                (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property") The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established

SOUTH CAROLINA  AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)                (page 1 of 8)
Experi © 1994, 2001 Bankers Systems, Inc. St. Cloud, MN Form AGCO-RESI-SC 1/21/2003

M-BK 01980 PG 0083

**3. MAXIMUM OBLIGATION LIMIT** The total principal amount of the Secured Debt (hereafter defined) secured by this Mortgage at any one time shall not exceed $ 1,400,000.00 _____. The limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Mortgage and does not apply to advances (or interest accrued on such advances) made under the terms of this Mortgage to protect Lender's security and to perform any of the covenants contained in this Mortgage Interest under the Note will be deferred, accrued or capitalized, however, Mortgagee shall not be required to defer, accrue or capitalize any interest except as provided in the Note. Future advances are contemplated and, along with other future obligations, are secured by this Mortgage even though all or part may not yet be advanced. Nothing in this Mortgage, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

**4 SECURED DEBT DEFINED** The term "Secured Debt" includes, but is not limited to, the following:
A The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e g , borrower's name, note amount, interest rate, maturity date)*:

One note of even date in the principal amount of 700,000.00 with final payment
due 08/21/2013

B All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt
C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender
D All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt
E Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt.

If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Mortgage or if Lender fails to give any required notice of the right of rescission

**5. PAYMENTS.** Mortgagor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Mortgage

**6 WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Mortgage. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Mortgagor may have against parties who supply labor or materials to improve or maintain the Property.

**8. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Mortgage, Mortgagor agrees:
A To make all payments when due and to perform or comply with all covenants
B. To promptly deliver to Lender any notices that Mortgagor receives from the holder
C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing

**9 DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Mortgagor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Mortgage is released

Exp̄erȇΣ © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-SC 1/21/2003

*(page 2 of 8)*

M-BK.01980 PG.0084

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Mortgagor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity, or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Mortgage.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding.

    A. Mortgagor is an entity which is duly organized and validly existing in the Mortgagor's state of incorporation (or organization). Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.

    B. The execution, delivery and performance of this Mortgage by Mortgagor and the obligation evidenced by the Evidence of Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.

    C. Other than disclosed in writing Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will give Lender prompt notice of any loss or damage to the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Mortgagor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Mortgagor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Mortgage. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any of Mortgagor's duties under this Mortgage, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Mortgage, Lender may, without notice, perform the duties or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Mortgage. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property)

    A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).

    B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents)

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive

M-BK 01980  PG 0085

any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15 CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16 DEFAULT. Mortgagor will be in default if any of the following occur.
   A   Any party obligated on the Secured Debt fails to make payment when due;
   B.   A breach of any term or covenant in this Mortgage, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
   C   The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;
   D   The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any person or entity obligated on the Secured Debt;
   E   A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F   A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G   Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C F R Part 1940, Subpart G, Exhibit M

17. REMEDIES ON DEFAULT. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Mortgage in a manner provided by law if this Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Mortgage and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18 EXPENSES; ADVANCES ON COVENANTS, ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage. Mortgagor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Mortgage and Mortgagor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19 ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U S C, 9601 et seq ), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance, and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has

© 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-REG-SC 1/21/2003

M-BK 01980  PG 0086

characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law  Mortgagor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing

A  No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B  Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C  Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property, or (2) there is a violation of any Environmental Law concerning the Property  In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law

D  Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law  Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding  In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings

E  Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F  There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing

G  Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H  Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property, (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property, or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law

I  Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval

J  Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense

K  As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Mortgage and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Mortgage without prejudice to any of Lender's rights under this Mortgage

L  Notwithstanding any of the language contained in this Mortgage to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Mortgage regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property  Any claims and defenses to the contrary are hereby waived

20 CONDEMNATION. Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Mortgagor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it  Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim  Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property  Such proceeds shall be considered payments and will be applied as provided in this Mortgage  This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document

21 INSURANCE. Mortgagor agrees to maintain insurance as follows

A  Mortgagor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires  What Lender requires pursuant to the preceding three sentences can change during the term of the Secured Debt  The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Mortgage

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause " Mortgagor shall immediately notify Lender of cancellation or termination of the insurance  Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor

Experȶ  © 1994, 2001 Bankers Systems, Inc., St Cloud, MN Form AGCO-RESI-SC  1/25/2003

(page 5 of 9)

M-BK 01980 PG 0087

Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

**22. NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**23. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Mortgagor warrants that all financial statements and information Mortgagor provides to Lender are, or will be, accurate, correct, and complete. Mortgagor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Mortgage and Lender's lien status on the Property. If Mortgagor fails to do so, Lender may sign, deliver, and file such documents or certificates in Mortgagor's name and Mortgagor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

**24. JOINT AND INDIVIDUAL LIABILITY, CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Mortgage may extend, modify or make any change in the terms of this Mortgage or the Evidence of Debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Mortgage. The duties and benefits of this Mortgage shall bind and benefit the successors and assigns of Mortgagor and Lender.

If this Mortgage secures a guaranty between Lender and Mortgagor and does not directly secure the obligation which is guarantied, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

**25. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Mortgage is complete and fully integrated. This Mortgage may not be amended or modified by oral agreement. Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Mortgage cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Mortgage. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Mortgage are for convenience only and are not to be used to interpret or define the terms of this Mortgage. Time is of the essence in this Mortgage.

**26. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Mortgage, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**27. WAIVER OF HOMESTEAD.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

**28. U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Mortgage:

☐ **Construction Loan.** This Mortgage secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Mortgagor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

Experta © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-SC 1/21/2003

M-BK 01980 PG 0088

☐ **Personal Property** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property  The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices

☐ **Filing As Financing Statement**  Mortgagor agrees and acknowledges that this Mortgage also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Mortgage is sufficient as a financing statement

**29  OTHER TERMS.** If checked, the following are applicable to this Mortgage

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision  Although the Secured Debt may be reduced to a zero balance, this Mortgage will remain in effect until released.

☒ **Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may, within thirty days after the sale of the mortgaged property, apply to the court for an order of appraisal  The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY

☐ **Separate Assignment.** The Mortgagor has executed or will execute a separate assignment of leases and rents  If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section

☐ **Additional Terms.**

**SIGNATURES:**  By signing below, Mortgagor agrees to the terms and covenants contained in this Mortgage and in any attachments  Mortgagor also acknowledges receipt of a copy of this Mortgage on the date stated above on Page 1

☐ Actual authority was granted to the parties signing below by resolution signed and dated _____

Entity Name  M N D Properties, LLC _____          Entity Name _____

_____ 08/22/2008 (Seal)          _____ 08/22/2008 (Seal)
(Signature) Mary Nell Degenhart                            (Signature) William Degenhart
member                                                      member
(Date)                                                      (Date)

Signed, Sealed and delivered in the presence of.

_____                                    _____
(Witness)                                                   (Witness)

☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors, signatures and acknowledgments

ExpereS?  © 1994  2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-SC  1/21/2003                    (page 7 of 8)

M-BK 01980 PG 0089

**PROBATE**
STATE OF _South Carolina_ , COUNTY OF _Richland_ } ss

Personally appeared before me the undersigned witness who, being duly sworn, deposed and said that (s)he saw the Mortgagor (and each Mortgagor if more than one) sign, seal and deliver the foregoing Mortgage and that (s)he, together with the other witness whose name appears as a witness, witnessed the execution thereof

Sworn to and subscribed before me this ___22nd___ day

of _August, 2008_

Notary Public for South Carolina

My commission expires _July 11, 2011_

(page 8 of 8)



M-BK 01980  PG 0090

### Exhibit A

All that certain piece, parcel or lot of land, with the improvements thereon, situate, lying and being in School District 5 (outside), Orangeburg County, South Carolina, being more particularly shown and designated as Lot 4, Block D, Eastwood Acres on a plat of survey prepared for Elizabeth H. Wilson by Donald J Smith, Jr, Inc., approved by Donald J Smith, Jr, RLS dated May15, 1990, and recorded in the office of the Register of Deeds for Orangeburg County in plat book 69-S at page 284;being bounded and measuring generally on the NORTHEAST by Circle Drive fo4 a total distance of 128.30 feet; on the SOUTHEAST by Lot 5 for a distance of 162 70 feet, on the SOUTHWEST by Lot 7 for a distance of 44.30 feet, and on the NORTHWEST by Lot 3 for a distance of 150 23 feet, all measurements being more or less and subject to an accurate current survey,

This being the same property conveyed to MND Properties, LLC by Deed of Elizabeth H Wilson recorded August 31, 2007 in the Office of the register of deeds for Orangeburg County in Deed Book 1226 at page 122.

TMS#: 0209-00-08-004 00
Property Address: 321 Eastwood Circle Orangeburg, SC 29118

**GUARANTY**

_____West Columbia_____, __South Carolina__
                        (City)                                    (State)

_____August 22, 2008_____

For good and valuable consideration  the receipt and sufficiency of which are hereby acknowledged, and to in-
duce __Congaree State Bank_____
(herein  with its participants, successors and assigns, called "Lender"), at its option  at any time or from time to
time to make loans or extend other accommodations to or for the account of __M N D Properties, LLC 2131__
__Park Street Columbia, SC 29201-131_____
(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely
and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by
reason of acceleration or otherwise, of the debts  liabilities and obligations described as follows

    A  If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, lia-
    bility or obligation of Borrower to Lender evidenced by or arising out of the following _____
    _____ and any extensions,
    renewals or replacements thereof (hereinafter referred to as the "Indebtedness")

    B  If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of each and
    every debt, liability and obligation of every type and description which Borrower may now or at any time
    hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or
    incurred  and whether it is or may be direct or indirect, due or to become due  absolute or contingent,
    primary or secondary, liquidated or unliquidated, or joint, several, or joint and several  all such debts,
    liabilities and obligations being hereinafter collectively referred to as the "Indebtedness")  Without limitation
    this guaranty includes the following described debt(s) _____

The Undersigned further acknowledges and agrees with Lender that

1  No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except
full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify  reduce, limit
or release the liability of the Undersigned hereunder

2  This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue
to be in force and be binding upon the Undersigned, whether or not all indebtedness is paid in full  until this
guaranty is revoked  by written notice actually received by the Lender, and such revocation shall not be effective as
to indebtedness existing or committed for  at the time of actual receipt of such notice by the Lender, or as to any
renewals, extensions and refinancings thereof  If there be more than one Undersigned  such revocation shall be
effective only as to the one so revoking  The death or incompetence of the Undersigned shall not revoke this
guaranty  except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the
incompetent and only prospectively, as to future transactions, as herein set forth

3  If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke
this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned
will forthwith pay to the Lender, the full amount of all indebtedness, whether due and payable or unmatured  If the
Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the
United States Bankruptcy Code  the full amount of all indebtedness, whether due and payable or unmatured, shall
be immediately due and payable without demand or notice thereof

4  The liability of the Undersigned hereunder shall be limited to a principal amount of $ _Unlimited_____
(if unlimited or if no amount is stated, the Undersigned shall be liable for all indebtedness, without any limitation as
to amount), plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all
agreements evidencing the indebtedness and securing the payment of the indebtedness, and all attorneys  fees,
collection costs and enforcement expenses referable thereto  indebtedness may be created and continued in any
amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the
Undersigned hereunder  The Lender may apply any sums received by or available to Lender on account of the
indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any
collateral security or from any other source to payment of the excess  Such application of receipts shall not reduce,
affect or impair the liability of the Undersigned hereunder  If the liability of the Undersigned is limited to a stated
amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective
to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender
advising the Lender that such payment is made under this guaranty for such purpose

5  The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys  fees
and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty
in any litigation or bankruptcy or insolvency proceedings

This guaranty includes the additional provisions on page 2, all of which are made a part hereof

This guaranty is ☒ unsecured, ☐ secured by a mortgage or security agreement dated _____,
☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above
written

_____
William B Degelbeck                          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

_____

_____

"Undersigned" shall refer to all persons who sign this guaranty severally and jointly

## ADDITIONAL PROVISIONS

6  Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may  but shall not be obligated to  enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned  The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty  without notice to or approval by the Undersigned)  (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness,  (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period)  or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness,  (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim  give any required notices or otherwise protect any Indebtedness, (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness, (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor  (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof  or to protect  insure  or enforce any collateral security, or any release, modification, substitution, discharge  impairment, deterioration  waste  or loss of any collateral security;  (vii) any foreclosure or enforcement of any collateral security, (viii) any transfer of any Indebtedness or any evidence thereof  (ix) any order of application of any payments or credits upon Indebtedness  (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code

7  The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full  Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction  The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness  whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision  The Undersigned shall remain obligated  to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged

8  The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower  has such obligation discharged in bankruptcy or otherwise discharged by law  "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged

9  If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence  notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made

10  Until the obligations of the Borrower to Lender have been paid in full  the Undersigned waives any claim  remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty  including, without limitation, any right of subrogation  contribution, reimbursement  indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower  collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract  statute or common law

11  The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment  and protest of any instrument evidencing Indebtedness  Lender shall not be required  first  to resort  for payment of the Indebtedness to Borrower or other persons or their properties  or first to enforce  realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty

12  The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise  without any limitation as to amount  unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary

13  This guaranty shall be enforceable against each person signing this guaranty  even if only one person signs and regardless of any failure of other persons to sign this guaranty  If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either  any or all  the Undersigned  This guaranty shall be effective upon delivery to Lender, without further act  condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns  Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable  Except as authorized by the terms herein  this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender  This guaranty shall be governed by the laws of the State in which it is executed  The Undersigned waives notice of Lender's acceptance hereof

**GUARANTY**

West Columbia                South Carolina
(City)                       (State)

August 22, 2008

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce __Congaree State Bank__ _____
(herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of __M N D Properties, LLC 2131 __Park Street Columbia, SC 29201-1111__
(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due  whether at maturity or earlier by reason of acceleration or otherwise  of the debts, liabilities and obligations described as follows

    A  If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following _____ _____ and any extensions renewals or replacements thereof (hereinafter referred to as the "Indebtedness")

    B  If this ☒ is checked  the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated  or joint, several, or joint and several  all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness")  Without limitation, this guaranty includes the following described debt(s) _____ _____

The Undersigned further acknowledges and agrees with Lender that

    1  No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing  except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder

    2  This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked  by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender  or as to any renewals, extensions and refinancings thereof  If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking  The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth

    3  If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty  then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured  If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code  the full amount of all Indebtedness  whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof

    4  The liability of the Undersigned hereunder shall be limited to a principal amount of $ __Unlimited _____ (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness  and all attorneys  fees, collection costs and enforcement expenses referable thereto  Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount  without affecting or impairing the liability of the Undersigned hereunder  The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess  Such application of receipts shall not reduce, effect or impair the liability of the Undersigned hereunder  If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender advising the Lender that such payment is made under this guaranty for such purpose

    5  The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys  fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings

This guaranty includes the additional provisions on page 2, all of which are made a part hereof

    This guaranty is ☒ unsecured, ☐ secured by a mortgage or security agreement dated _____ ☐ secured by _____

    IN WITNESS WHEREOF  this guaranty has been duly executed by the Undersigned the day and year first above written

William V Copenhart                          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

"Undersigned" shall refer to all persons who sign this guaranty  Severally and jointly

## ADDITIONAL PROVISIONS

6  Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may  but shall not be obligated to  enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned  The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do  omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned) (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness  (iii) any waiver, adjustment  forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness, (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness, (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor  (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security  or any release, modification  substitution, discharge, impairment, deterioration, waste  or loss of any collateral security  (vii) any foreclosure or enforcement of any collateral security, (viii) any transfer of any Indebtedness or any evidence thereof  (ix) any order of application of any payments or credits upon Indebtedness. (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code

7  The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness  except the defense of discharge by payment in full  Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction  The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision  The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged

8  The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law  "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged

9  If any payment applied by Lender to Indebtedness is thereafter set aside  recovered, rescinded or required to be returned for any reason (including, without limitation  the bankruptcy, insolvency or reorganization of Borrower or any other obligor)  the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made

10  Until the obligations of the Borrower to Lender have been paid in full, the Undersigned waives any claim  remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under the guaranty, including, without limitation, any right of subrogation, contribution, reimbursement  indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts  whether or not such claim, remedy or right arises in equity, or under contract  statute or common law

11  The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness  Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness  before enforcing this guaranty

12  The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount  unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary

13  This guaranty shall be enforceable against each person signing this guaranty  even if only one person signs and regardless of any failure of other persons to sign this guaranty  If there be more than one  signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned  This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender  shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns  Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable  Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated  released or otherwise changed except by a writing signed by the Undersigned and Lender  This guaranty shall be governed by the laws of the State in which it is executed  The Undersigned waives notice of Lender's acceptance hereof

## GUARANTY

<u>UNION</u> _____, __SOUTH CAROLINA__
    (City)                                           (State)

<u>AUGUST 23, 2008</u>

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged  and to in duce ARTHUR STATE BANK  BELTLINE _____
therein, with its participants, successors and assigns  called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of  M N D PROPERTIES, LLC _____

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows

A  If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, lia bility or obligation of Borrower to Lender evidenced by or arising out of the following
_____ and any extensions renewals or replacements thereof (hereinafter referred to as the "Indebtedness")

B  If this ☒ is checked the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt  liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due  absolute or contingent primary or secondary, liquidated or unliquidated, or joint, several, or joint and several, all such debts liabilities and obligations being hereinafter collectively referred to as the "Indebtedness")  Without limitation, this guaranty includes the following described debt(s) _____

The Undersigned further acknowledges and agrees with Lender that

1  No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce  limit or release the liability of the Undersigned hereunder

2  This is an absolute, unconditional and continuing guaranty of payment of the indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked  by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof  If there is more than one Undersigned  such revocation shall be effective only as to the one so revoking  The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth

3  If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured  If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code  the full amount of all Indebtedness, whether due and payable or unmatured  shall be immediately due and payable without demand or notice thereof

4  The liability of the Undersigned hereunder shall be limited to a principal amount of $ <u>UNLIMITED</u>
(if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto  Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder  The Lender may apply any sums received by or available to Lender on account of the Indebtedness  from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess  Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder  If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose

5  The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty, in any litigation or bankruptcy or insolvency proceedings

This guaranty includes the additional provisions on page 2, all of which are made a part hereof

This guaranty is ☒  unsecured  ☐  secured by a mortgage or security agreement dated _____
☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written

_____
WILLIAM J DEGENHART               _____

_____

"Undersigned" shall refer to all persons who sign this guaranty  severally and or by

## ADDITIONAL PROVISIONS

6  Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned  The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned) (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness (ii) any one or more extensions or renewals of indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any indebtedness, (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any indebtedness, (iv) any full or partial release of settlement with, or agreement not to sue Borrower or any other guarantor or other person liable in respect of any indebtedness, (v) any discharge of any evidence of indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor  (vi) any failure to obtain collateral security (including rights of setoff) for indebtedness  or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security, or any release, modification, substitution, discharge, impairment, deterioration  waste or loss of any collateral security  (vii) any foreclosure or enforcement of any collateral security, (viii) any transfer of any indebtedness or any evidence thereof, (ix) any order of application of any payments or credits upon indebtedness (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code

7  The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to indebtedness, except the defense of discharge by payment in full  Without limiting the generality of the foregoing  the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority  usury  illegality or unenforceability which may be available to Borrower or any other person liable in respect of any indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction  The Undersigned expressly agrees that the Undersigned shall be and remain liable to the fullest extent permitted by applicable law  for any deficiency remaining after foreclosure of any mortgage or security interest securing indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision  The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged

8  The Undersigned further agrees that the Undersigned shall be and remain obligated to pay indebtedness even though any other person obligated to pay indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law  "indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged

9  If any payment applied by Lender to indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such indebtedness as fully as if such application had never been made

10  Until the obligations of the Borrower to Lender have been paid in full, the Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay indebtedness  arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation  contribution, reimbursement indemnification exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral or other party obligated for Borrower's debts, whether or not such claim  remedy or right arises in equity, or under contract, statute or common law

11  The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment  and protest of any instrument evidencing indebtedness  Lender shall not be required first to resort for payment of the indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for indebtedness, before enforcing this guaranty

12  The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary

13  This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty  If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned  This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender  shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns  Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof  and to this end the provisions of this guaranty are declared to be severable  Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated  released or otherwise changed except by a writing signed by the Undersigned and Lender  This guaranty shall be governed by the laws of the State in which it is executed  The Undersigned waives notice of Lender's acceptance hereof

Express® ©Bankers Systems, Inc  St. Cloud  MN 56301  FORM M-340  8/7/2005 (For Corporate Guarantor use M 250)

| | | |
|---|---|---|
| MMD PROPERTIES LLC<br>2131 PARK STREET<br>COLUMBIA SC 29201 | ARTHURSTATE BANK CLEMSON ROAD<br>100 EAST MAIN STREET<br>PO BOX 769<br>UNION SC 29379 | SSN       20 23725 2<br>Loan Number 82002220<br>Date 10 01 2008<br>Maturity Date 10 01 2010<br>Loan Amount  $ 100,000.00<br>Renewal Of 82002220<br>OFF/POC   552 MM/M |
| **BORROWER S NAME AND ADDRESS**<br>includes each borrower above jointly and severally | **LENDER S NAME AND ADDRESS**<br>"You" means the lender its successors and assigns | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of ONE HUNDRED THOUSAND AND 00/100 _____ Dollars $ 100,000.00 _____

☐ **Single Advance** I will receive all of this principal sum on _____ No additional advances are contemplated under this note

☑ **Multiple Advance** The principal sum shown above is the maximum amount of principal I can borrow under this note  On 10 01 2008

   ☐ I will receive the amount of $ 0.00 _____ and future principal advances are contemplated

   Conditions The conditions for future advances are PER DOCUMENTS REQUEST AND LOAN OFFICER APPROVAL

   ☒ Open End Credit You and I agree that I may borrow up to the maximum amount of principal more than one time  This feature is subject to all other conditions and expires on 10 01 2010

   ☐ Closed End Credit You and I agree that I may borrow up to the maximum only one time and subject to all other conditions I

**INTEREST** I agree to pay interest on the outstanding principal balance from 10 01 2008 _____ at the rate of _____ 6.000% per year until 10 01 2010 _____

☐ **Variable Rate** This rate may then change as stated below

   ☐ Index Rate The future rate will be _____ the following index rate _____

   ☐ No Index The future rate will not be subject to any internal or external index it will be entirely in your control

   ☐ Frequency and Timing The rate on this note may change as often as _____

      A change in the interest rate will take effect _____

   ☐ Limitations During the term of this loan the applicable annual interest rate will not be more than _____ % or less than _____ % The rate may not change more than _____ % each _____

   Effect of Variable Rate A change in the interest rate will have the following effect on the payments

   ☐ The amount of each scheduled payment will change   ☐ The amount of the final payment will change

   ☐ _____

**ACCRUAL METHOD** Interest will be calculated on a ACTUAL/360 _____ basis

**POST MATURITY RATE** I agree to pay interest on the unpaid balance of this note owing after maturity and until paid in full as stated below

   ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above)

   ☐ at a rate equal to _____

☐ **LATE CHARGE** If a payment is not made within _____ days after it is due I agree to pay a late charge of _____

☒ **ADDITIONAL CHARGES** In addition to interest I agree to pay the following charges which  ☐ are  ☒ are not  included in the principal amount above DOCUMENTATION FEE $100.00

**PAYMENTS** I agree to pay this note as follows

MONTHLY PAYMENTS OF ACCRUED INTEREST CALCULATED ON THE AMOUNT OF CREDIT OUTSTANDING BEGINNING ON 11 01 2008 AND PRINCIPAL DUE ON 10 01 2010

**ADDITIONAL TERMS**

| | |
|---|---|
| ☐ **SECURITY** This note is separately secured by (describe separate document by type and date) | **PURPOSE** The purpose of this loan is WORKING CAPITAL _____ |
| (This section is for your internal use Failure to list a separate security agreement does not mean the agreement will not secure this note) | **SIGNATURES** I AGREE TO THE TERMS OF THIS NOTE INCLUDING THOSE ON PAGE 2 I have received a copy on today s date<br>MMD PROPERTIES LLC<br><br>WILLIAM L DEGENHART |
| Signature for Lender<br><br>JIMMIE A HOLCOMBE  SENIOR VICE PRESIDENT | MARY NELLIE DEGENHART |

SOUTH CAROLINA  UNIVERSAL NOTE

EXGERE© 10 1981 1991 Bankers Systems Inc  St Cloud MN  Form UN SC  3/7/2002 _____

(page 1 of 2)

12 06 2006  11.49    8034194090         PROFESSIONAL REALTY                PAGE  02



**FIRST SAVERS BANK**

December 1, 2006

Three Amigos Land Company LLC
c/o George Lee
Professional Realty Inc
8910 Two Notch Road Suite 302
Columbia South Carolina 29223

Re  $1 80MM Development Loan to Three Amigos Land Company, LLC

Dear Gentlemen

This letter constitutes the commitment of First Savers Bank (the "Bank") to make a loan (the "Loan") to the borrower described below (the "Borrower") under the following terms and conditions

**General Terms**

| | |
|---|---|
| **Borrower** | Three Amigos Land Company LLC |
| **Guarantor** | The Loan will be unconditionally guaranteed by George Lee, William Degenhart and Paul Degenhart  Notwithstanding the above the above mentioned guarantors liability under the loan will be limited to the following percentages' |
| | George Lee          50% |
| | William Degenhart   25% |
| | Paul Degenhart      25% |
| **Loan Amount** | $1,800 000 |
| **Type of Loan** | Development |
| **Purpose of Loan** | Provide funds for the purchase and 3 79 acres of land located at the intersection of Highway 17 and Airport Road in Jacksonville Florida  Borrower intends to develop this parcel into three retail out-parcels |
| **Collateral** | The Loan will be secured by a title-insured, first real estate mortgage on the property described in the Purpose of Loan above  Assignment of all Rents Leases, and Profits |
| **Interest Rate** | 30-day LIBOR Base Rate plus 2 50% |

1

12 06 2006  11 49    6034194090         PROFESSIONAL REALTY            PAGE  03

**Fees     and**     Borrower shall pay Bank a commitment fee of $9,000 00 at the closing of the
**Expenses**         loan.

Borrower also shall pay all costs and expenses incident to the Loan The
foregoing shall be paid by Borrower even if the Loan does not close.  The Bank
designates Lindsey Smith as its counsel

**Payment**     Interest only for twenty three (23) months   One final payment of all principal
**Terms**       plus any accrued but unpaid interest shall be due and payable upon the maturity

12 06 2006  11 49    8034194090    PROFESSIONAL REALT    PAGE  04

of the loan, 24 months from the loan closing

| | |
|---|---|
| **Loan to Value** | An appraisal will be ordered by the Bank and must be found acceptable to the Bank prior to the Loan closing. The loan amount shall not exceed 75% of the appraised value |
| **Loan Advances** | Bank will make Loan Advances based upon completed construction and installation only. All construction draws will include a draw request in form and substance satisfactory to Bank. Advances will be made on a pro-rata basis in accordance with the percentage of completion. Borrower shall use Loan proceeds only for construction purposes. All advances shall be made in accordance with the terms and conditions of a loan agreement. Borrower shall only be entitled to one advance per calendar month |

## Reporting Requirements And Operating Covenants.

| | |
|---|---|
| **Financial Reporting** | The Borrower and Guarantors shall provide the Bank with annual financial statements and tax returns |

## Loan Documentation And Other Closing Requirements.

| | |
|---|---|
| **Loan Documentation** | The Loan and Bank's liens and security interests in the Collateral shall be evidenced by this commitment letter, and also shall be evidenced and supported by such additional loan documents ("Loan Documents") as Bank and its counsel deem necessary, including a promissory note from Borrower to Bank in the face amount of the Loan. The Loan Documents shall be in form and contain substantive content satisfactory to Bank and its counsel. All Loan Documents must be executed and delivered to Bank, and if required by Bank's counsel, filed or recorded at or before closing |
| **Authority Documents** | Borrower shall furnish to Bank a certified copy of its organizational documents, together with resolutions approving the Loan and a certified certificate of authority from Borrower's state of organization all of which shall be current, in effect as of closing and otherwise satisfactory to Bank and its counsel |
| **Counsel's Opinion** | A written opinion shall be furnished at, and effective as of, closing by Borrower's independent counsel and the opinion shall be in form and substance satisfactory to Bank and its counsel |

12 06 '2006  11.49     803J194090          PPOFESSIONAL REALTY                     PAGE   05

| | |
|---|---|
| **Insurance** | Borrower shall provide to Bank at closing evidence satisfactory to Bank that the following insurance is in effect as of closing builders risk and general liability insurance The insurance shall be in amounts, with companies and on terms acceptable to Bank, it shall show Bank as a mortgagee or loss payee, as instructed by Bank and it shall be continuously maintained in force by Borrower until the Loan is repaid in full |
| **Banking Relationship** | The Bank requests that the Borrower maintain its primary deposit accounts with the Bank |
| **Additional Requirements** | Borrower and Guarantor shall satisfy all such other terms and conditions as Bank and its counsel deem necessary to ensure the proper documentation of the Loan the perfection of the liens and security interests in the Collateral and compliance with all laws and regulations applicable to Bank. Borrower and Guarantor relative to the Loan The additional requirements shall include without limitation, those set forth in Attachment 1. |

## Miscellaneous.

| | |
|---|---|
| **Conditions Precedent** | The obligations of Bank to close are subject to the satisfaction of all of the terms and conditions of this commitment letter and the Loan Documents in a manner satisfactory to Bank and its counsel  Without limiting the foregoing, but in furtherance thereof, a condition precedent to closing is Borrower demonstrating to Bank that the Collateral does not present environmental risks or liabilities that are unacceptable to Bank. |
| **Borrower Certification** | The acceptance of this commitment shall constitute a certification by the person executing the acceptance that all material matters relating to Borrower and Guarantor have been disclosed to Bank and that there has been no material, adverse change in Borrower, to include its financial condition and operating condition  or Guarantor |
| **No Change** | The obligation of Bank to make the Loan is conditioned upon there being no material adverse changes in the financial or operating condition of Borrower or Guarantor |
| **Non-Assignability** | This commitment is for the sole benefit of Borrower and no other Person shall have any rights under this commitment against Bank, including any bankruptcy trustee or debtor in possession   This commitment may not be assigned without the prior written consent of Bank |

This commitment and all terms and provisions hereto shall survive the closing of the loan and shall not be merged into any of the loan documents. This commitment shall be interpreted, construed and enforced according the Laws of the State of South Carolina. All expenses incident to the making, closing and enforcement of the loan, including, without limitation, attorney fees, insurance premiums shall be paid by the Borrower. If this commitment is acceptable, please indicate by signing in the space provided of this commitment and return to us no later than December 8, 2006. The bank will have no obligation to fund the loan if the loan does not close prior to January 1, 2007

It is our pleasure to assist you in the project and should you have any questions, please feel free to contact me at (864) 286-2270

Sincerely,


William M Aiken, III    Randy Bell
Director of Real Estate Banking    Senior Vice President
Plantation Financial Corporation    First Savers Bank

## ACCEPTED AND AGREED TO THIS $\overset{th}{\phantom{.}}$ Day of December 2006

AS BORROWER FOR Three Amigos Land Company, LLC

By _____
George Lee, Manager

AS GUARANTOR

_____
George Lee  guarantor

_____
William Degenhart, guarantor

## LOAN AGREEMENT

THIS LOAN AGREEMENT (the "Agreement") is made and entered into as of this 22nd day of December, 2006 (the "Effective Date") by and among **THREE AMIGOS LAND CO**, LLC, a South Carolina limited liability company (the "Borrower"), **GEORGE M. LEE, III, WILLIAM J. DEGENHART, and PAUL V. DEGENHART** (collectively, the "Guarantors") and **FIRST SAVERS BANK** (the "Lender")

### WITNESSETH·

The Borrower has applied to the Lender for certain revolving credit financing more particularly described hereinafter and the Lender is willing to extend such financing to the Borrower upon compliance by the Obligors with the terms and provisions hereof  Therefore, in consideration of the mutual covenants, terms, provisions and conditions set forth hereinafter and of the financing identified hereinafter to be provided by the Lender to the Borrower and for other good and valuable consideration, the receipt and sufficiency of all of which are hereby acknowledged, the Borrower, the Guarantors and the Lender hereby agree as follows

### ARTICLE ONE
### DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings

1 1     ADVANCE   Each advance of Loan proceeds hereunder made by the Lender to or for the benefit of the Borrower to enable the Property to be acquired and the Improvements to be constructed and which may consist of Direct Costs and Indirect Costs, less any retainages provided hereinafter

1 3     BUDGET     The Development Cost Analysis attached hereto and incorporated herein as Exhibit "B"

1 4     CLOSING.   The date of the execution and delivery of this Agreement by the Obligors and the Lender.

1 5     CONSTRUCTION ASSIGNMENT.   The Assignment of Construction Documents executed and delivered by the Borrower and the Engineer to the Lender as security for the Obligations with respect to the construction and installation by the Borrower of the Improvements within the Property

1 6     CONSTRUCTION CONTRACT   The contract to be entered into by and between the Borrower and the Contractor, and such other contracts between the Borrower

1

and the Contractor or with other contractors as shall be approved in writing by the Lender for the construction and installation of the Improvements

1 7    CONSTRUCTION COSTS   All costs to be incurred by the Borrower in the construction and installation of the Improvements consisting, collectively, of the Direct Costs and the Indirect Costs

1 8    CONSTRUCTION DOCUMENTS   Collectively, the Construction Contract, the Engineering Contract, the Plans, and all other documents enumerated in Section 3 5 hereinafter

1 9    CONTRACT ASSIGNMENT   The Assignment of Contracts, Contract Rights, Leases, Rents and Profits executed by the Borrower to the Lender herewith as security for the Obligations

1 10    CONTRACTOR   The licensed general contractor who shall perform labor and furnish materials to the Borrower pursuant to the Construction Contract for construction of all or any portion of the Improvements

1 11    DIRECT COSTS   All expenditures, excluding Indirect Costs, incurred or to be incurred by the Borrower for site preparation, installation of utilities, infrastructure and landscaping at the Property, and for the furnishing of labor and materials pursuant to the Construction Contract in connection with the construction and installation of the Improvements.

1 12    ENGINEER    The civil engineering firm engaged by the Borrower pursuant to the Engineer's Contract to design the Improvements to be constructed and installed upon the Property, to prepare the Plans, and to render other engineering services related thereto

1 13    ENGINEER'S CONTRACT   The Agreement to be entered into between the Borrower and the Engineer for the design of the Improvements to be constructed and installed upon the Property, for the development of the Plans, and for other engineering services related to the design and construction of the Improvements

1 14    GOVERNMENTAL AUTHORITIES   Any federal, state or local governmental, quasi-governmental or regulatory authority, agency, department, commission, board, bureau, instrumentality or subdivision, including courts, tribunals and arbitrators

1 15    GOVERNMENTAL REQUIREMENTS   All laws, ordinances, orders, rules or regulations of all Governmental Authorities, including without limitation zoning ordinances, subdivision regulations, building codes, environmental regulations, public

2

health regulations, fire protection codes, and all other laws, ordinances, orders, rules or regulations imposed by applicable Governmental Authorities

1 16   GUARANTEES.   The Guaranty Agreements of even date from the Guarantors to the Lender securing the Obligations.

1 17   HAZARDOUS MATERIALS.   Any substance (i) which is or becomes defined as a "hazardous waste", "hazardous substance", pollutant or contaminant under any Governmental Requirement relating to the protection of human health or the environment including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (42 U S C Section 9601, et seq ), and the Resource Conservation and Recovery Act (42 U S C Section 6903, et seq ), (ii) the presence of which requires investigation or remediation under any Governmental Requirement relating to the protection of human health or the environment, (iii) which is toxic, explosive, corrosive, flammable, infectious, radioactive, carcinogenic, mutagenic, or otherwise hazardous and is or may become regulated by any Governmental Authorities, (iv) the presence of which on the Property causes or threatens to cause a nuisance upon the Property or to adjacent properties, or poses or threatens to pose a hazard to the health or safety of persons on or about the Property or adjacent properties, (v) the presence of which on adjacent properties could constitute a trespass thereon by the Borrower; or (vi) which contains gasoline, diesel fuel, other petroleum hydrocarbons, asbestos, asbestos-containing materials, formaldehyde, or polychlorinated biphenyls in violation of applicable Governmental Requirements.

1 18   IMPROVEMENTS.   The streets and roads, parking facilities, drainage facilities, utilities, infrastructure, and on-site improvements that shall be constructed and installed by the Borrower upon the Property, and which shall be necessary or desirable in order to support the development of the Property into retail outparcels

1 19   INDIRECT COSTS   All expenditures incurred or to be incurred by the Borrower in connection with or incidental to the acquisition of the Property, the Loan, and the construction and operation of the Improvements set forth in the Budget, other than Direct Costs, including without limitation recording fees, documentary stamps, title insurance premiums, surveyors' charges, civil engineering fees, insurance premiums, appraisal fees, environmental assessment fees, inspection fees, attorneys' fees, taxes, utility charges, permitting fees and charges, project administration fees, and development fees

1 20   INSPECTING AGENT   Such inspector who shall be designated or employed by the Lender at the expense of the Borrower to review and approve the Plans, to review and inspect the Improvements during the course of construction and installation, to certify to the Lender during construction the extent to which construction and installation of the Improvements has been completed, to review all Draw Requests, to certify to the Lender during construction the extent to which construction and installation

3

of the Improvements has been completed and that the Improvements are being constructed and installed in accordance with the Plans, and to render such other services in connection with the inspection and supervision of the construction and installation of the Improvements as the Lender shall from time to time deem necessary or desirable The Inspecting Agent shall be a licensed general contractor, a licensed civil engineer, or shall otherwise have sufficient experience as determined by the Lender in its reasonable judgment to enable the Inspecting Agent to properly discharge its duties specified herein

1 21    LOAN COMMITMENT   The Loan Commitment Letter from the Lender to the Borrower dated December 1, 2006, accepted by the Borrower on December 5, 2006, a copy of which is attached hereto and incorporated herein as Exhibit "B".

1 22    LOAN DOCUMENTS   This Agreement, the Note, the Mortgage, the Contract Assignment, the Construction Assignment, the Guarantees, and any and all other Loan Documents, instruments and certificates, required to be executed and/or delivered to the Lender in connection with the Loan as required under any of the terms of this Agreement

1.23    LOAN   The financing in the maximum principal sum of One Million Eight Hundred Thousand and No/100 ($1,800,000 00) Dollars being made available to the Borrower by the Lender herewith pursuant to this Agreement, as evidenced by the Note, inclusive of all of the Obligations, collateral and Loan Documents respecting the same

1 24    MORTGAGE   The Mortgage, Security Agreement, and Fixture Financing Statement of even date executed by the Borrower to the Lender as security for the Obligations and covering the Property (including the Improvements)

1 25    NOTE   The Promissory Note of even date from the Borrower to the Lender evidencing the Borrower's obligation to repay to the Lender the principal sum of up to One Million Eight Hundred Thousand and No/100 ($1,800,000 00) Dollars, with interest, in accordance with the terms set forth therein

1 26    OBLIGATIONS.   All indebtedness, liabilities and obligations to be paid, performed and/or observed by the Obligors in connection with the Loan which are secured by the Mortgage and the Loan Documents and which are defined more fully therein

1.27    OBLIGORS   Collectively, the Borrower and the Guarantors

1 28    PLANS   The final plans and specifications, including site plan, for the design, construction and installation of the Improvements prepared by the Engineer, which shall be initialed for identification purposes by the Borrower and the Contractor and delivered to the Lender, including all working and shop drawings prepared for use in

4

connection therewith, or as may be hereafter altered by change orders approved in writing by the Lender as provided hereinafter

1 29    PROPERTY    That certain parcel of land containing approximately three and 79/100 (3 79+) acres located at the intersection of Highway 17 and Airport Road in Jacksonville, Duval county, Florida, more fully identified on Exhibit "A" attached hereto and incorporated herein.

1 30    TITLE INSURER    Chicago Title Insurance Company

1 31    TITLE COMMITMENT    The lender's title insurance commitment number _____ issued by the Title Insurer, effective _____, 2006, at _____ m in the amount of One Million Eight Hundred Thousand and No/100 ($1,800,000 00) Dollars.

### ARTICLE TWO
### THE LOAN TRANSACTION

2 1    FINANCING.    This Agreement is executed by and among the parties hereto for the purpose of setting forth all terms and conditions with respect to the Loan and is intended to include all covenants, conditions, representations and warranties made in connection with the Loan  This Agreement shall be deemed to incorporate by reference all of the terms set forth in all of the Loan Documents  Should any conflict arise between any terms of this Agreement and any terms of the Loan Documents, the terms of this Agreement shall prevail, except that in the event of any conflict between the terms of this Agreement and the terms of the Note, the terms of the Note shall prevail

2 2    EVIDENCE OF INDEBTEDNESS    Subject to and upon the terms and conditions of this Agreement, the Lender agrees to lend and to make available to the Borrower and the Borrower agrees to accept and borrow from the Lender up to a maximum principal sum of One Million Eight Hundred Thousand and No/100 ($1,800,000.00) Dollars pursuant to the Loan, which indebtedness shall be evidenced by the Note executed and delivered by the Borrower this date to the Lender

2 3    COLLATERAL    The Note and all other Obligations shall be secured by the Mortgage, the Contract Assignment, the Construction Assignment, and the Guarantees, all in accordance with the terms and provisions of this Agreement

2 4    LOAN PURPOSES AND USES    The proceeds of the Loan shall be used by the Borrower for the purposes of financing the Borrower's acquisition of the Property and paying the Borrower's Construction Costs incurred in connection with the construction and installation of the Improvements

5

2 5     FEE   The Borrower shall pay to the Lender herewith a loan commitment fee of Nine Thousand and no/100 ($9,000 00) Dollars

## ARTICLE THREE
## CONDITIONS PRECEDENT

The obligation of the Lender to make the Loan available to the Borrower is subject to the Borrower's obligation to execute and/or deliver to the Lender, or the waiver by the Lender of the Borrower's obligation to execute and/or deliver to the Lender, at or prior to the Closing, the following instruments and documents, all of which shall first be reviewed by and must be reasonably acceptable to the Lender and its legal counsel as to both form and substance

3 1     LOAN DOCUMENTS   The Note, the Mortgage, the Guarantees, the Contract Assignment, the Construction Assignment, the Loan Commitment, appropriate UCC-1 Financing Statements, and the written opinion of legal counsel to the Borrower and the Guarantors with respect to various matters stipulated by the Lender, including without limitation, the validity and enforceability of the Loan Documents At or immediately upon Closing, the Borrower shall record and file in the appropriate recording offices, the Mortgage, the Contract Assignment, the UCC-1 Financing Statements, and any other Loan Documents which the Lender shall then require to be recorded or filed

3 2     TITLE INSURANCE AND DOCUMENTS   The Borrower shall deliver to the Lender the Title Commitment from the Title Company, whereby the Title Company shall commit to insure the Mortgage as of the date and time of its recordation as a good and valid first mortgage upon the Property, without exception other than as shall first be reviewed and approved by the Lender, subject to fulfillment of the requirements precedent therein to the issuance of the final lender's title insurance policy The Borrower covenants and agrees to provide to the Lender prior to Closing, for review and approval, copies of all exceptions to title listed in the Title Commitment Immediately upon recordation of the Mortgage, the Borrower shall cause the Title Company to issue and deliver to the Lender the final lender's title insurance policy insuring the Mortgage as good and valid first mortgage upon the Property as of the date and time of recording thereof, in conformity with the Title Commitment and without exception other than previously set forth in the Title Commitment and thereafter approved by the Lender

3 3     SURVEY   The Borrower shall submit to the Lender an ALTA/ACSM survey of the Property prepared by a registered Florida land surveyor acceptable to the Lender The survey shall set forth, at a minimum, the following items pertaining to the Property (1) the courses and measured distances of all exterior property lines, building set-back lines and easements, (2) the total area within the exterior boundaries expressed in square footage and/or acreage, (3) the location and dimensions of all encroachments by or onto the Property; (4) the location and the dimensions of all existing Improvements upon the Property; (5) a certification or other evidence satisfactory to the Lender that all streets and other means of ingress and egress abutting the Property have been completed,

6

dedicated and accepted for public maintenance and public use and that all utilities and water lines servicing the Property enter the Property from such abutting public streets, (6) a certification that no portion of the Property is situated within a flood hazard area, as defined in the Flood Disaster Protection Act of 1973, as amended from time to time, (7) a certification that there are no other easements, rights-of-way, party walls, encroachments, or improvements located on, crossing or affecting the Property that are visible, recorded or known to the surveyor which are not shown on the survey; (8) the current zoning classification and tax map reference number(s) of the Property, (9) the location, by reference to the Title Commitment, of all easements and encumbrances upon, crossing or affecting the Property, and (10) such other information as the Lender may reasonably require

3 4   ORGANIZATIONAL DOCUMENTS   The Borrower shall submit to the Lender its written and executed Certificate, to which shall be attached true, correct and complete copies of its Articles of Incorporation, its Bylaws, a current Certificate of Existence issued by the Secretary of State for the State of South Carolina, and appropriate resolutions authorizing the transactions contemplated herein and designating its authorized signatories who shall have the power and authority to execute and deliver all Loan Documents on its behalf

3 5   CONSTRUCTION DOCUMENTS   The Borrower shall submit to the Lender the following construction documents at or prior to the initial Advance hereunder, all of which shall also be subject to the review and approval of the Inspecting Agent prior to the initial Advance

    A   The Plans, including a complete final Site Plan of the Property

    B   The Construction Contract

    C   The Engineer's Contract.

    D   Contractor Financials.  Financial Statements from the Contractor that shall be in satisfactory form, content and detail

    E   Construction Budget   The Development Cost Analysis, attached hereto as Exhibit "B"

    F   Contractor General Liability Insurance   General Liability Insurance in compliance with the Insurance Requirements set forth hereinafter, in a minimum amount of not less than Three Million and No/100 ($3,000,000 00) Dollars single limits coverage and Three Million and No/100 ($3,000,000 00) Dollars aggregate coverage

7

G  Governmental Requirements  Evidence of compliance with all applicable Governmental Requirements, including without limitation, all zoning certificates, building permits, storm drainage system approvals, erosion control and environmental protection permits, curb cuts and encroachment permits, and occupancy permits

3 6  INSURANCE DOCUMENTS  Policies of insurance, with receipts indicating payment in full of all premiums thereon, in full compliance with all Insurance Requirements set forth hereinafter, shall be delivered to the Lender at or prior to Closing with respect to the following

A  Public Liability Insurance  Public Liability Insurance in a minimum amount of not less than Two Million and No/100 ($2,000,000 00) Dollars single limits coverage and Two Million and No/100 ($2,000,000 00) Dollars aggregate coverage

3 7  OTHER DOCUMENTATION  Such other and further documentation as the Lender may reasonably require, including without limitation the following documents

A  Environmental Evaluation Report  A satisfactory environmental evaluation report, conducted by a qualified environmental engineering and testing service acceptable to the Lender, addressed to the Lender, which establishes that no Hazardous Materials are known to be on or beneath the surface of the Property or, if any such Hazardous Materials shall be found to be present, that measures have been taken by the Borrower to fully and adequately remove the same from the Property or otherwise comply with all applicable Governmental Requirements and to fully cure and correct all consequences upon the Property of the presence of such Hazardous Materials thereon prior to their removal

B  Public Utility Service and Availability  Written evidence satisfactory to the Lender that public utility service, including without limitation, water, sanitary sewer, storm sewer, electricity, and telephone is presently available to or will be brought to the boundaries of the Property in the course of the construction of the Improvements in sufficient size and quantity to accommodate all contemplated uses thereat and that no moratoriums or other limitations are known or contemplated which might in any way limit the availability or capacity of such service to the Improvements to be constructed on the Property.

C  Appraisal  A current written appraisal of the Property, to be prepared by a qualified Member, Appraisal Institute, acceptable to the Lender, conforming in form and content to all requirements established by the Lender, which shall establish a Loan to fair market value of the Property (inclusive of the

8

Improvements to be installed thereon) ratio of not greater than seventy-five (75%) percent

, D      Acquisition Documents    Copies of all purchase contracts and related documentation pursuant to which the Borrower has the right to acquire the Property.

3 8     CLOSING DISBURSEMENT    A closing statement which shall evidence the payment by the Borrower at Closing of all expenses of or connected with the closing of the Loan, including without limitation the full loan commitment fees stated in the Loan Commitment, all recording fees and documentary stamps connected with recording of any Loan Documents, all title insurance premiums, title examination fees, bond and insurance premiums, surveyors' charges, appraisal fees, inspection fees, civil engineering fees, environmental assessments and analyses, due diligence expenses, attorneys' fees for the Lender's and the Borrower's attorneys, and any other applicable reasonable costs and expenses associated or connected with the closing of the Loan

## ARTICLE FOUR
## CONSTRUCTION AND DISBURSEMENT PROVISIONS

Advances shall be made by the Lender pursuant to the following provisions upon compliance by the Borrower with the following construction provisions and requirements

4 1     INITIAL ADVANCE    The Borrower shall be entitled to an initial Advance at Closing of up to _____ and No/100 ($_____ 00) Dollars, which shall be available for the sole purpose of funding the Borrower's acquisition of the Property and certain approved closing costs incurred in connection therewith and with the Closing of the Loan. Thereafter, Advances shall be made available to the Borrower only in accordance with the remaining terms and provisions of this Article Four

4 2     CONSTRUCTION COVENANTS AND REQUIREMENTS    The Borrower covenants and agrees to comply with the following provisions and requirements during the construction and installation of the Improvements

A     Use    Advances hereunder shall be used in accordance with the Budget for the sole purpose of paying the Direct Costs and Indirect Costs approved by the Lender in accordance with the Budget and incurred in the design, construction and installation of the Improvements on the Property pursuant to the Construction Documents, which Construction Documents shall not be materially amended without the prior written approval by the Lender

B     Standards    The Borrower shall cause all construction and installation of the Improvements to be performed diligently, continuously and

9

strictly in accordance with all applicable Governmental Requirements, including without limitation, the Americans with Disabilities Act, building codes, zoning ordinances and environmental regulations, and strictly in accordance with the Construction Documents

C     Assurance of Completion.  Within ten (10) days following written notification to the Borrower from the Lender, the Borrower shall deposit with the Lender, collected funds which, in the Lender's reasonable judgment, shall be sufficient, when added to any undisbursed portion of the Loan, to assure completion of construction and installation of the Improvements and payment in full of all Construction Costs, in accordance with the Plans  All funds deposited with the Lender shall be disbursed by the Lender in accordance with the terms of this Agreement

D     Inspection.  The Lender and its Inspecting Agent shall have the right, at any time during the construction and installation of the Improvements, to enter upon and inspect the Property and the construction and installation of the Improvements thereon  The Lender shall have the right to require that all work and materials materially failing to conform to the Construction Documents, or any applicable Governmental Requirement, in the reasonable judgment of the Lender or its Inspecting Agent, be corrected or replaced so as to fully and completely conform thereto  Neither the existence nor the exercise of the inspection and approval rights contained herein shall impose upon the Lender or its Inspecting Agent any duty or obligation to grant such approval nor shall the same impose upon the Lender any liability to the Borrower or any other party whatsoever, it being acknowledged that such rights, the exercise thereof, and the employment of the Inspecting Agent are for the sole benefit of the Lender, and that the Lender and the Inspecting Agent make no representations and assume no obligations or liabilities to the Borrower or any other party with respect to the quality of construction and installation of the Improvements or the absence of defects therefrom

E     Materials   All materials incorporated in the construction and installation of the Improvements shall be free and clear of any lien or security interest as of (a) the time of delivery thereof to the Property, or (b) upon disbursement of the Advance from which the cost of such materials are to be funded  The Borrower shall, upon request of the Lender, produce such contracts, receipts, or other proof of the foregoing.

F     Corrections.  The Borrower shall notify the Lender in writing of any material departure from the Plans and shall, without demand from the Lender, correct any material defects in the Improvements or material departures from any of the Construction Documents or any applicable Governmental Requirements promptly following discovery of the same  The disbursement of any Advances by

10

the Lender shall not constitute a waiver of the Lender's right to require strict compliance with the foregoing covenant, whether or not such defects or departures from the Plans shall have theretofore been discovered or called to the attention of the Lender

G    Acts of the Lender   The Borrower hereby agrees, with respect to all Advances, that the Lender shall not be deemed the agent or trustee for the Borrower and will not be held accountable in any fashion for any Advance made in good faith

H    Subcontractors and Suppliers   The Borrower shall not execute any material contract other than the Construction Documents or otherwise become a party to any arrangement for the performance or rendering of labor, services or work, or the supplying or furnishing of materials in the construction and installation of the Improvements, except as shall be first disclosed to and approved by the Lender and only with persons or entities thereafter approved by the Lender in its reasonable discretion   For the purposes of this subsection, "material" contracts are defined as those having a value greater than Fifty Thousand and no/100 ($50,000 00) Dollars

I    Change Orders.   The Borrower shall deliver to the Lender an original and one counterpart of all proposed material change orders to or affecting the Construction Documents or the construction or installation of the Improvements prior to the execution or approval of any such change order by the Borrower   No material change order shall become effective until it has been approved in writing by the Lender   Notwithstanding the foregoing, change orders not exceeding Twenty-Five Thousand and no/100 ($25,000 00) Dollars per single order or Fifty Thousand and no/100 ($50,000.00) Dollars in the aggregate shall not require the Lender's approval

J    Consultants   The Lender shall have the right to select and retain additional outside professional consultants, in addition to the Inspecting Agent, at the sole reasonable cost and expense of the Borrower, if in the reasonable judgment of the Lender, the employment of such consultants is necessary or reasonably justifiable to investigate any actual or potential concerns relating to the design, construction and/or the installation of the Improvements

K.    Copies of Contracts   The Borrower shall cause the Contractor to deliver to the Lender, promptly upon request, copies of all contracts, subcontracts, purchase orders and invoices pertaining to the work to be performed pursuant to the Construction Contract and the Plans, and copies of any contracts, bills of sale, statements, receipted vouchers or agreements under which the Borrower holds or claims title to any materials, fixtures or other articles incorporated or to be incorporated into the Improvements

11

4 4    CONDITIONS PRECEDENT TO ADVANCES    The obligation of the Lender to make any Advance hereunder is subject to the compliance by the Borrower with the following requirements at the time of each such Advance

A.    Representations and Warranties.    All representations and warranties of the Obligors contained in this Agreement and all Loan Documents shall remain true and correct in all material respects

B    Other Conditions    All Conditions Precedent set forth in Article Three hereinabove shall have been and shall remain fulfilled in all material respects

C.    Builder's Risk Insurance    The Borrower shall have furnished to the Lender and shall maintain completed value builder's risk insurance covering all Improvements to be constructed and installed and all building materials, supplies and components delivered to or stored upon the Property against loss or damage due to fire or other casualty, including all risk (with special extended coverage endorsement, if appropriate) insurance in an amount of not less than the full replacement cost of the Improvements, which coverage shall remain in full force and effect until completion of the Improvements and delivery at such time or any earlier time of full replacement value fire and hazard insurance coverage, inclusive of such completed Improvements

D    Performance    The Borrower shall have fully performed all duties and obligations required to be performed hereunder as of or prior to the date of such requested Advance

E    Construction in Place    The construction and installation of the Improvements in place as of the date of the requested Advance shall have been made substantially in accordance with the Construction Contract and the Plans as modified by any change orders approved by the Lender, and all prior Advances shall have been used solely for the purposes permitted under this Agreement

F    No Defaults    The Borrower shall not be in breach or default in the performance or observance of any other terms and provisions of this Agreement or of any other Loan Document, and there shall have been no material adverse change in the financial condition of the Borrower or any Guarantor subsequent to the day of execution of this Agreement, except as shall have been reported in writing to the Lender and approved or waived in writing by the Lender

G    Damage    The Improvements in place shall not have been materially damaged or injured by fire or other casualty or condemned or threatened by condemnation; or if so damaged or condemned, provisions

12

satisfactory to the Lender shall have been agreed upon in writing and duly executed by the Borrower, the Contractor, and the Lender for repair or restoration thereof in accordance with this Agreement and the Mortgage

H   Payment of Construction Costs.  The Borrower shall have paid all outstanding sums then due and owing for Direct Costs and approved Indirect Costs, if any, incurred in the construction and installation of the Improvements, except for such Construction Costs as will be paid from the proceeds of the Advance requested by the Borrower.

I   No Modifications   No changes, modifications, supplements, alterations or amendments to or of the Plans or the Construction Contract shall have been made in any material respect without the prior written approval of the Lender

J   Compliance with Advance Procedures   The Borrower shall fully comply as to each Advance with all Procedures for Advances set forth hereinafter

4 5   PROCEDURES FOR ADVANCES   The following procedures and requirements shall be followed and adhered to in connection with all requests for, approvals of, and disbursements of Advances hereunder

A   Frequency   Following the initial Advance hereunder, the Borrower shall be entitled to request Advances no more frequently than monthly

B   Requests For Advances   The Borrower shall request Advances by submitting to the Lender, at least five (5) business days in advance of the date upon which the Borrower requests that the Advance be disbursed, duplicate copies of a "Draw Request", with one copy to be submitted to the Lender and one copy to the Inspecting Agent   Each "Draw Request" shall consist of a standard AIA Form Request for progress payment, AIA documents G702 and G703, duly executed and certified by or on behalf of the Borrower   The copy of the Draw Request submitted to the Lender shall further be accompanied by the written certificate of the Borrower, in form and content satisfactory to the Lender, certifying as of the date of the Draw Request that the Borrower is in full compliance with all terms and conditions of this Agreement and containing an estimate by the Borrower of the remaining costs of completing the construction and installation of the Improvements following disbursement of the requested Advance, together with copies of invoices and such other supporting details and documentation with respect to any of the foregoing as the Lender shall require from time to time

C   Title Insurance Endorsement   An endorsement to the previously issued lender's title insurance policy, to be issued by the Title Insurer as of the proposed disbursement date of the requested Advance, insuring the continued first

13

lien of the Mortgage without exception other than as stated in the original policy, or as thereafter approved by the Lender, advancing the date of the policy to the date and time of such endorsement, and increasing the coverage of the policy to the aggregate amount of disbursed Loan proceeds (including the Advance then disbursed) outstanding as of the date thereof

   D. Inspection Report Upon receipt of a Draw Request, and prior to the date of the requested Advance, the Inspecting Agent shall review the Draw Request and shall physically inspect the progress of construction and installation of the Improvements to date and, at the option of the Inspecting Agent, all construction records with respect thereto maintained by the Borrower and the Contractor, whereupon the Inspecting Agent shall deliver to the Lender and the Borrower its written report that the Draw Request is acceptable or unacceptable, in which latter event the Inspecting Agent shall specify the defects in the Draw Request and any specific items with respect thereto which it recommends to be disallowed or devalued

   E Amount of Advances Following its receipt of each Draw Request and Inspection Report complying with the foregoing requirements, the Lender shall determine the amount of each Advance upon the basis of the actual costs of the construction and installation of the Improvements to date less amounts previously advanced, subject to any matters set forth in the Inspection Report and any limitations which the Lender may reasonably determine to exist pursuant to subsections (F) and (G) hereinafter, from which amount as is determined by the Lender shall be deducted such retainage as shall be set forth hereinafter

   F. Retainage The Lender shall be entitled to withhold from the approved amount of any Advance any fees due to the Inspecting Agent, together with a retainage in the amount set forth in the Construction Contract All inspection fees shall be disbursed by the Lender and all retainage withheld by the Lender shall be pledged as additional collateral for the Loan and held until the time of disbursement of the Final Advance as set forth hereinafter

   G Rights of Lender Notwithstanding any other provisions hereof, the Lender shall not be obligated to make any Advance in the event that the Lender or the Inspecting Agent determines that there are any uncorrected structural defects in any of the Improvements or any material departures from the terms of the Plans, or any uncorrected violations of any applicable Governmental Requirements, or that there are insufficient undisbursed funds remaining under the Loan to complete the Improvements in accordance with the Plans and/or the Budget; or that any interest payments due under the Note shall not be paid fully current No waiver by the Lender of any Condition Precedent, Construction Requirement, Procedure for Advance, Representation, Warranty or Covenant herein in connection with any Advance hereunder shall be construed as a waiver

14

of the Lender's right to require strict compliance with the same or any other Condition Precedent, Construction Requirement, Procedure for Advance, Representation, Warranty or Covenant in connection with any subsequent Advance hereunder

H     Method of Disbursement     Upon compliance with all of the foregoing Procedures for Advances, the Lender will cause the amount of the approved Advance to be remitted on or prior to the date for which such Advance was requested, to the Borrower, unless any Event of Default has occurred and is then continuing, in which event the Lender shall have the absolute right at its sole discretion to remit such Advance through the Title Insurer, directly to the Borrower, directly to the Contractor, to any subcontractors, materialmen or laborers directly, or jointly to the Borrower and any combination of any of the foregoing parties

4 6     FINAL ADVANCE     At such time as the Borrower notifies the Lender that it has completed the construction and installation of all of the Improvements upon the Property pursuant to the Plans, the Lender small make the final Advance (including disbursement of retainages previously held back by the Lender) hereunder and shall thereupon close off the revolving line of credit represented by this Agreement to any further Advances hereunder, provided that the Borrower shall first comply with the following additional requirements, in addition to those hereinabove set forth

A.     Final Draw Request. The Borrower's final Draw Request shall be submitted to the Lender at least ten (10) business days prior to the requested disbursement date of the Final Advance, and shall be accompanied by the following additional items

B     Borrower's Certificate     The Borrower shall provide its written certificate, in form and content satisfactory to the Lender, certifying to the completion of construction and installation of the Improvements in accordance with the Plans and with all applicable Governmental Requirements.

C     Completion Affidavits     The Borrower shall provide sworn affidavits of the Borrower and the Contractor stating that all Advances have been used by the Contractor solely to pay for labor and services performed and rendered, or materials supplied or furnished in connection with, the construction and installation of the Improvements, that the Construction Costs have been paid in full or, upon funding of the final Advance will be paid in full, and that all construction and installation of the Improvements has been completed in accordance with the Construction Contract, the Plans, and all applicable Governmental Requirements

15

WCSR 3501184v2

D      Certificate of Substantial Completion   The Borrower shall furnish to the Lender a Certificate of Substantial Completion, AIA Document G704, executed by the Borrower and the Contractor

E      Lien Waivers   The Borrower shall deliver to the Lender complete and final notarized mechanic's lien waivers from the Contractor, and any subcontractors or materialmen reasonably required by the Lender or the Title Insurer, in form and content acceptable to the Lender and the Title Insurer

F      Compliance with Governmental Requirements   The Borrower shall deliver to the Lender certified copies of any certificates of approval, acceptance or compliance required or reasonably determined to be necessary by the Lender or by any applicable Governmental Authority for the use and occupancy of the Property

G      Final Inspection Report   The Inspecting Agent shall deliver to the Lender its final written certificate in form and content reasonably satisfactory to the Lender, stating that all work to be performed pursuant to the Construction Contract has been fully completed substantially in compliance therewith and with the Plans

H.     As-Built Survey   The Borrower shall deliver to the Lender a final current as-built subdivision survey of the Property showing all Improvements thereon, and complying with all other Survey Requirements set forth hereinabove

I      Title Insurance Endorsement   The Borrower shall deliver to the Lender a final endorsement to the previously issued Lender's Title Insurance Policy, insuring the continued first lien of the Mortgage without exception other than as stated in the original policy and as approved by the Lender, advancing the date of the policy to the date of final disbursement, and insuring the Mortgage for the full amount of the Loan disbursed by the Lender hereunder

## ARTICLE FIVE
## REPRESENTATIONS AND WARRANTIES

In order to induce the Lender to enter into and execute this Agreement and to make the Loan to the Borrower, the Borrower makes the following representations and warranties to the Lender, each of which shall survive the execution of this Agreement and remain in full force and effect until complete payment and discharge of the Obligations

5 1      EXISTENCE   The Borrower is a corporation duly organized, validly existing and in good standing under the laws of the State of South Carolina, with full power and authority to enter into the Loan, to execute and deliver the Loan Documents and to perform in accordance with the terms thereof

16

5 2    AUTHORITY   The Borrower has full power and authority to own the Property and to execute, deliver and perform the Borrower's Obligations under the Loan Documents  The Borrower has taken all appropriate action whereby its designated officer is and has been authorized to execute and deliver this Agreement and the Loan Documents on behalf of the Borrower  The execution, delivery and performance by the Borrower of the Loan Documents does not and will not require the consent of any other parties or any Governmental Authorities not previously obtained and delivered to the Lender (except as to such future performance, if any, contemplated hereunder as may require subsequent approvals or consents of applicable Governmental Authorities), nor will the same contravene the governing documents of the Borrower or any applicable Governmental Requirements presently in effect, nor will the same result in any breach of or constitute a default under any agreement or instrument to which the Borrower is a party or by which the Property is affected

5 3    LEGALLY ENFORCEABLE AGREEMENT   This Agreement and each of the Loan Documents are duly and properly executed and delivered by the Obligors for value received and constitute the valid Obligations of the Obligors, legally binding upon and enforceable against the Obligors in accordance with their respective terms, not subject to any defense based upon usury, capacity of the Obligors or, to the best of the Borrower's knowledge, other defense, except as may be subsequently limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting the enforcement of creditors' rights generally

5 4    DOCUMENTATION   The Obligors, as applicable, have delivered to the Lender all documents, financial statements, certificates, licenses, permits, authorizations, consents, exemptions, approvals, and contracts required to be submitted to the Lender hereunder, or required by any applicable Governmental Authority, all of which are material conditions precedent to the funding of the Loan by the Lender and all of which are, to the best of the Borrower's knowledge, true, accurate and complete in all material respects as of the date hereof

5 5    FINANCIAL STATEMENTS   All financial statements heretofore furnished to the Lender are complete and correct in all material respects and fairly present the financial condition of the Obligors as of the dates thereof and the results of their operations for the periods covered by such statements  All such financial statements have been prepared in accordance with generally accepted accounting principles consistently applied and no material adverse change has occurred in the financial condition or operations of the Obligors reflected therein since the dates thereof

5 6    LITIGATION   No actions, suits or proceedings are pending or, to the best of the Borrower's knowledge, threatened before any Court, Governmental Authority or arbitrator (a) involving the validity, priority or enforceability of this Agreement, the Note, the Mortgage, any Loan Documents, any Construction Documents, or the Borrower's title

17

to and the Lender's Mortgage upon the Property, or (b) against or affecting the Borrower or any Guarantor which may, in any one case or in the aggregate, materially adversely affect the financial conditions, affairs, properties or business operations of the Obligors or the ability of the Obligors to perform any of the Obligations, whether singly or in the aggregate

5 7   NO DEFAULTS   To the best of the Borrower's knowledge, the Obligors are not presently in default under any of the terms or conditions of this Agreement, the Note, the Mortgage, any of the Loan Documents, any Construction Documents, or any order, injunction, judgment, award, or decree of any applicable judicial or Governmental Authority; or, in any material respect, any other Mortgage, lease, bank loan, credit agreement or other instrument to which the Obligors, or any of them, are a party or by which the Obligors, or any of them, may be bound or affected

5 8   OPERATIONS   The execution, delivery and performance of the Obligations by the Borrower do not and will not violate or contravene any provisions of any instrument creating or governing the operations of the Borrower, and will not result in a breach of or constitute a default under any other mortgage, bank loan, credit agreement or other instrument to which the Borrower or any Guarantor is a party or by which the Borrower or any Guarantor may be bound or affected

5 9   DISCLOSURE   To the best of the Obligors' knowledge, no representation or warranty of the Obligors contained in this Agreement or any other Loan Documents and no statement contained in any certificate, schedule, list, financial statement or instrument now or hereafter to be furnished to the Lender by or on behalf of the Obligors contains or will contain any untrue statement or omission of any material fact

5 10   SOLVENCY   There is not pending or, to the best of the Obligors' knowledge, threatened by or against any of the Obligors, nor is there contemplated any petition in bankruptcy, order for relief (whether voluntary, involuntary or by operation of law), any assignment for the benefit of creditors, any petition seeking reorganization or arrangement under the bankruptcy laws of the United States of America or any state thereof, any liquidation of all or the greater portion of the property of any of the Obligors or any other action brought under the aforesaid bankruptcy laws or other similar laws involving any of the Obligors

5 11   COMPLIANCE WITH GOVERNMENTAL REQUIREMENTS   To the best of its knowledge, the Borrower is in full material compliance with all applicable Governmental Requirements pertaining to the Borrower, the Property, and the construction and installation of the Improvements

5 12   UTILITIES   All public utility service, including without limitation water, power, sanitary sewer, storm sewer and drainage, gas, and telephone, which may be necessary for the construction, installation and operation of the Improvements for their

18

WCSR 3501184v2

intended purpose are available to the boundaries of the Property or (if not currently available) will be extended to the boundaries of the Property, are or will be unencumbered, are or will be located in a publicly dedicated and accepted right-of-way, and are or will be in sufficient size, quantity, capacity and pressure to accommodate all intended uses and operations at the Property

5 13   USE OF PROCEEDS   The proceeds of the Loan shall be used by the Borrower solely for the purpose of financing the Borrower's acquisition of the Property and the development, design, construction, and installation of the Improvements as set forth herein, together with such other incidental costs related thereto as may be permitted in writing from time to time by the Lender, and for no other purposes whatsoever

5 14   INGRESS AND EGRESS.   All streets and roads necessary for ingress and egress to the Property and for the full use and operation of the Improvements for their intended purposes have been completed or, if not currently available, will be built and dedicated for public use and accepted for maintenance by the appropriate Governmental Authorities, except as to such private means of ingress and egress for which recorded permanent easements exist and which have been approved in writing by the Lender herewith

5 15   TAXES   The Obligors have filed all federal, state and other tax returns required to be filed and has fully paid all taxes required under such returns None of the Obligors have received any notice from the Internal Revenue Service or any other Governmental Authority asserting that any additional assessments or taxes are or may be due

5 16   ENVIRONMENTAL MATTERS   To the best of the Borrower's knowledge, (a) the Property is free from Hazardous Materials in violation of any Governmental Requirement and do not constitute an environmental hazard of any type under any applicable Governmental Requirement, (b) there has been no production, disposal, storage, release, discharge, spill, leak, dumping, or emission on the Property of any Hazardous Materials or any activity thereon which could have produced Hazardous Materials or toxic effects on humans, flora, or fauna, (c) there are no surface impoundments, lagoons, waste piles, land fills, injection wells, underground storage areas, or other manmade facilities thereat which have contained or accommodated Hazardous Materials, (d) neither the Borrower nor any third parties have developed, discharged, buried, released or otherwise placed Hazardous Materials on the Property, including the soil, surface water or ground water thereof; (e) there are no buried, partially buried, above ground or other tanks, storage vessels, drums or containers located on the Property, (f) there is no evidence of the release, discharge, leaking, dumping, emission, or seepage, by accident or otherwise, of Hazardous Materials onto or into the Property; (g) there has been no treatment, storage, disposal, discharge or other type of release of Hazardous Materials onto property adjacent to or near to the Property which may constitute a risk of contamination of the Property or of surface or ground water flowing to

19