or through the Property, and (h) the proposed operations on the Property, including construction and installation of the Improvements thereon and materials to be generated therewith, do not and will not generate Hazardous Materials in violation of applicable Governmental Requirements The Borrower has conducted or commissioned a complete environmental assessment of the Property to determine the presence of any Hazardous Materials thereat, and, to the best of the Borrower's knowledge, no other inspections, audits, or investigations have been commissioned or conducted with respect thereto by any prior owner, third party or Governmental Authority The Borrower has received no warning, notice of violation, administrative complaint, judicial complaint or other formal or informal notice with respect to any Hazardous Materials on the Property and is not aware of any current or previous owner thereof receiving any such notices or complaints from any Governmental Authority with respect thereto All environmental permits and licenses required pursuant to any applicable Governmental Requirements with respect to the Property and the conditions thereon have been obtained and are currently valid, or would not normally be required at this time and may be obtained in the ordinary course of business, including without limitation licenses and permits with respect to storage, treatment, and disposal of all waste products To the best of the Borrower's knowledge, the construction and operation of the Improvements will not violate any applicable Governmental Requirements for environmental protection, including without limitation the Federal Clean Air Act, the Federal Clean Water Act, the Federal Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the National Environmental Policy Act, and any other Federal, state or local statute of like tenor and effect

5 17   THE PLANS.   The Plans are satisfactory to the Borrower and have been approved, to the extent that approvals are required, by all applicable Governmental Authorities and by all affected beneficiaries of any applicable properly recorded and indexed private restrictive covenants, as the case may be, and are in compliance with all applicable Governmental Requirements, including without limitation the Americans with Disabilities Act

5 18   CERTAIN LEGAL MATTERS   Each Obligor represents that such Obligor has not been convicted of any federal, state or local felony crimes whatsoever, nor has any such Obligor been subject to any civil judgment or any regulatory order or finding involving fraud, securities violations or other matters relating to financial responsibility or business integrity, or been the subject of any bankruptcy, insolvency, receivership, assignment for benefit of creditors or similar proceedings.

5 19   ASSET OWNERSHIP   Each Obligor has good and marketable title to all of the properties and assets reflected on its financial statements submitted to the Lender in connection with the Loan, and all such properties and assets are free and clear of any deeds of trust, mortgages, liens, security interests, pledges and other encumbrances, except as otherwise reflected in said financial statements

20

WCSR 3501184v2

## ARTICLE SIX
## COVENANTS

The Borrower hereby covenants with the Lender for the duration of the Loan as follows

6 1    INSPECTIONS    Upon reasonable advance notice, the Borrower shall permit the Lender, the Inspecting Agent, and any other persons designated by the Lender to enter upon and inspect the Property during normal business hours, and all materials to be used in the construction and installation of the Improvements, and to examine the Plans and all related plans and shop drawings which may be maintained at the Property, and to discuss the progress of construction or any of the foregoing with the Contractor and the Borrower The Borrower shall make available for audit, inspection and copying all property, equipment, books, contracts, records, leases, rent rolls and other papers and information related to the Borrower, the construction, installation or operation of the Improvements or the Property. The Borrower agrees to comply with all reasonable requirements and recommendations of the Lender with respect to any matters revealed by any of the foregoing inspections

6 2    COMPLIANCE WITH GOVERNMENTAL REQUIREMENTS    The Borrower shall cause the construction, installation and operation of the Improvements to comply with all applicable Governmental Requirements, including without limitation the Americans with Disabilities Act, and with all recorded restrictive covenants and easements affecting the Property

6 3    TAXES AND ASSESSMENTS    The Borrower shall promptly pay and discharge (or contest, provided the Borrower shall comply with the applicable provisions of the Mortgage) all taxes, assessments and other charges and levies imposed upon the Property or upon the Borrower or upon any of the income or other property of the Borrower, as well as all claims of any kind which, if unpaid, might become a lien or charge upon or against the Property

6 4    COSTS AND EXPENSES    The Borrower shall promptly pay when due all reasonable charges, fees and expenses required to satisfy the terms and conditions of this Agreement, including without limitation all taxes and recording expenses, all reasonable legal fees and expenses of the Lender's and the Borrower's legal counsel, all reasonable fees and expenses of the Inspecting Agent, and all other costs and expenses of any nature incurred pursuant to the terms of this Agreement

6 5    FURTHER ASSURANCES.    The Borrower shall execute and deliver, or cause to be executed and delivered, to the Lender such further documents, instruments, certificates, assurances and other items, and shall do all such additional and further acts and deeds which the Lender shall deem reasonably necessary or desirable to comply with the terms and conditions of, or to effectuate the intent of, this Agreement or to preserve or protect the collateral or security for any of the Obligations

21

6 6    BOOKS AND RECORDS   The Borrower shall keep and maintain full and accurate accounts and records with respect to the construction, installation and operation of the Improvements, in accordance with generally accepted accounting principles consistently applied

6 7    INDEMNITY   The Borrower shall indemnify, defend and hold harmless the Lender from and against all third-party liens, claims, demands, actions, causes of action, assessments, losses, damages, liability, costs and expenses, including without limitation, interest, reasonable attorneys' fees and penalties, arising out of, affecting or in connection with the Loan, the Property, the design, construction, installation and/or operation of the Improvements, the quality, condition or value of the Improvements, the execution and performance of this Agreement or any other Loan Documents, any acts or omissions of the Borrower, any breach of this Agreement or any of the Loan Documents, the disbursement of Advances by the Lender, any lien or claim of lien filed for record against the Property or the Borrower, or the sale of Lots   The provisions of this Section 6 7 shall survive the payment and discharge of the Note and shall remain in full force and effect for so long as the possibility of any such liabilities, damages, losses, costs and expenses shall exist   This indemnity shall not apply with respect to conditions or occurrences first arising after title to the Property is transferred by foreclosure or deed in lieu of foreclosure or with the consent of the Lender, provided, however, the foregoing indemnity shall continue to apply to conditions or occurrences in existence before title to the Property is transferred by foreclosure or deed in lieu of foreclosure or with the consent of the Lender which are not discovered until after the transfer of the Property

6 8    FINANCIAL STATEMENTS   The Borrower shall furnish to the Lender annual financial statements consisting of statements of income and expenses, profits and losses, and balance sheets related to the Property and all construction and operations thereon, within one hundred twenty (120) days following the end of the Borrower's fiscal or calendar year, together with annual signed financial statements and tax returns as to the Borrower, annual signed financial statements and copies of filed tax returns (including attached schedules) as to the Guarantors, and such other financial information or statements as to the Borrower and the Guarantors which the Lender may request by not less than thirty (30) days prior written notice from time to time, all to be in form and content satisfactory to the Lender

6 9    DEPOSIT ACCOUNT RELATIONSHIP   The Borrower shall maintain its primary deposit account relationship with the Lender

6 10    NOTICE OF LITIGATION   The Borrower shall promptly furnish to the Lender promptly upon receipt thereof, copies of any pleadings in litigation, notices of bankruptcy, notices of default, or notices of any proceedings before any Governmental Authority which involve the Property; the construction, installation or operation of the Improvements; any licenses, permits or approvals pertaining thereto; the Borrower,

22

and/or any Guarantor, and which in any instance, alone or in the aggregate with other actions or proceedings, if determined adversely to the Borrower or the Guarantor, could have a material adverse effect on the financial condition, affairs, properties or operations of the Borrower or the Guarantors or their ability to perform under the Loan Documents

6 11    ALTERATION OF IMPROVEMENTS OR PROPERTY.  The Borrower shall not materially alter or change the Improvements or the Property except in accordance with the Plans, applicable Governmental requirements, and this Agreement, nor shall the Borrower engage in any other businesses or activities at the Property other than that which has been presented to the Lender, without the express prior written consent of the Lender

6 12    MAINTENANCE OF INSURANCE    The Borrower shall maintain and furnish to the Lender copies of all insurance policies and renewals thereof required of the Borrower pursuant to this Agreement and the Loan Documents in full force and effect throughout the term of the Loan with a Best's Insurance Reports Policyholder's Rating of A or A+ or better and a financial size category of Class X to XV or better, with such terms and deductibles as shall be acceptable to the Lender  Such policies and renewals thereof shall be held by the Lender, shall contain a noncontributory endorsement making losses payable to the Lender only up to the outstanding Obligations, and shall provide that the same shall not be canceled except upon thirty (30) days prior written notice to the Lender  At least fifteen (15) days prior to the expiration date of all such policies or renewals thereof, renewals of such policies satisfactory to the Lender shall be delivered to the Lender marked "Premium Paid" or accompanied by other evidence of premium payments satisfactory to the Lender  All such policies shall designate the Lender as the mortgagee or Loss Payee

6 13    LICENSES AND PERMITS   Throughout the term hereof, the Borrower shall maintain in full force and effect all certificates, licenses, permits, authorizations, consents and approvals from applicable Governmental Authorities relating to the construction, installation and/or operation of the Improvements, and the Borrower shall obtain all certificates, licenses, permits, authorizations, consents and approvals required for the full use, occupancy and operation of the Improvements following construction thereof from all applicable Governmental Authorities and shall deliver copies of the same to the Lender upon request

6 14    SIGNS AND PUBLICITY.   If requested by the Lender and permitted under applicable Governmental Requirements, the Borrower shall erect on the Property a sign to be provided by the Lender stating that the Lender is providing construction financing for the Improvements, which shall be placed and maintained in a prominent location on the Property satisfactory to the Lender  The Borrower further grants permission to the Lender to otherwise publicize the financing of the Improvements

23

WCSR 3501184v2

6 15  PERFORMANCE PURSUANT TO LOAN DOCUMENTS  The Obligors shall at all times perform in accordance with and comply with all terms, conditions, covenants, requirements, representations and warranties set forth herein, in the Note, the Mortgage and all of the Loan Documents

6.16  ENVIRONMENTAL COMPLIANCE  Neither the Borrower nor the Borrower's agents, employees or tenants shall generate, manufacture, refine, transport, treat, store, handle, dispose of, release, discharge, produce or process any Hazardous Materials at or upon the Property in violation of any applicable Governmental Requirements  The Borrower, and its agents, employees and tenants shall comply with all Governmental Requirements regarding environmental protection, shall keep the Property free and clear of any liens imposed pursuant to any applicable Governmental Requirements respecting environmental protection, and shall conduct and complete all investigations, studies, sampling and testing, and all remedial, removal and other actions necessary to clean up and remove any Hazardous Materials on, from or affecting the Property pursuant to any applicable Governmental Requirements  The Borrower shall indemnify, defend and hold harmless the Lender from and against all liens, claims, damages, actions, causes of action, losses, damages, liabilities, costs, and expenses whatsoever, including without limitation, penalties and reasonable attorney's fees, incurred or suffered by or asserted against the Lender, for, with respect to, or as a direct or indirect result of the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release upon or from the Property of any Hazardous Materials, regardless of whether the same may be caused by or within the control of the Borrower, whether intentional or unintentional, or due to the violation of any applicable Governmental Requirements regarding environmental protection or of any covenant or representation contained herein with respect thereto by the Borrower  The foregoing covenants, provisions and indemnities shall survive any foreclosure or other realization by the Lender on the Mortgage which may result in acquisition by the Lender or conveyance by the Lender of fee title, or any other lesser right, title and interest, in or to the Property  This indemnity shall not apply with respect to conditions or occurrences first arising after title to the Property is transferred by foreclosure or deed in lieu of foreclosure or with the consent of the Lender, provided, however, the foregoing indemnity shall continue to apply to conditions or occurrences in existence before title to the Property is transferred by foreclosure or deed in lieu of foreclosure or with the consent of the Lender which are not discovered until after the transfer of such Property

6 17  SUBORDINATION OF FEES  The Borrower shall not enter into any agreement of any nature with any affiliated or unaffiliated persons, funds or entities with respect to the development of the project or the management of the operation of the Property, unless such agreement(s) shall provide that the same shall not survive any foreclosure of the Property or other realization on the Mortgage by the Lender  Any agreement with any affiliated persons shall provide that no management, development or similar fees will be paid by the Borrower with respect to the management or development

24

of the Property unless and until all monthly debt service requirements set forth herein shall have been met and fully paid by the Borrower

6 18    PRESERVATION OF EXISTENCE   The Borrower shall preserve and maintain its existence as presently constituted in good standing throughout the term of the Loan

### ARTICLE SEVEN
### DEFAULT AND REMEDIES

7 1     EVENTS OF DEFAULT   The term "Event of Default", whenever used hereinafter, shall mean any one or more of the following events:

A       Occurrence of an Event of Default set forth or defined in the Note, the Mortgage or any of the Loan Documents which is not cured within any applicable grace period set forth therein, including without limitation failure to timely pay or perform any Obligations set forth therein, with a default thereunder to constitute a default hereunder

B       Failure by the Borrower to fully, completely and timely perform or observe any Obligations under this Agreement or to observe, satisfy and comply with any of the terms, covenants, conditions, requirements, restrictions and provisions of this Agreement, which failure is not cured within such grace period with respect thereto as is set forth herein or, if no grace period is set forth herein as to any such failure, if such failure is not cured within thirty (30) calendar days following written notice thereof from the Lender, provided, however, that if such default cannot reasonably be cured within the 30-day period, then the Borrower shall have an additional reasonable time to cure (but not to exceed sixty days in the aggregate) provided both that the Borrower has begun and is diligently pursuing efforts to cure within the 30 day period and that the default is reasonably susceptible of being cured

C       Falsity in any material respect of any representations or warranties contained herein as and when made

D       Discontinuance at any time during the construction and installation of the Improvements for a period of ten (10) or more consecutive business days, except for discontinuances due to fire, labor disputes, strikes, acts of God, material shortages for specific materials essential to the construction of the Improvements, or other causes beyond the control of the Borrower

E       Entry of an order or decree by any Court of competent jurisdiction enjoining the construction or installation of the Improvements or enjoining or prohibiting the Borrower or the Lender from performing in accordance with this

25

Agreement, which proceedings are not discontinued or which order or decree is not vacated or stayed within twenty (20) days after the entry thereof.

F    The construction and installation of the Improvements, in the sole reasonable judgment of the Lender, shall not be capable of being completed in accordance with the Plans upon disbursement of the remaining undisbursed Loan proceeds, and the Borrower shall have failed to deposit in collected funds with the Lender, within ten (10) days following written notification to the Borrower, such sum as the Lender shall have reasonably determined to be necessary to enable the construction and installation of the Improvements to be completed in accordance with the Plans

7.2    REMEDIES UPON DEFAULT.    Upon occurrence of any Event of Default, the Lender shall have the right to immediately exercise any and all of the following rights and remedies without further notice to the Borrower

A    Remedies in Loan Documents. In addition to all other rights and remedies set forth herein, the Lender shall have the absolute right to assert and exercise any and all rights and remedies set forth in the Note, the Mortgage and all of the Loan Documents

B    Termination  The Lender may suspend or terminate all obligations of the Lender under this Agreement, including without limitation, the obligation of the Lender to make further Advances, with the further right to apply any retainage or escrows then held by it to the outstanding Obligations

C.    Performance of Work    The Lender through its employees, independent contractors, agents or any receiver appointed for such purposes by any Court of competent jurisdiction, may enter upon the Property, perform or cause to be performed any and all work and labor, and supply and cause to be supplied any and all materials, equipment and improvements necessary to complete the Improvements substantially in accordance with the Plans, to secure and protect the same, to use any undisbursed portion of the Loan in connection with the foregoing, with all such sums so expended (including without limitation reasonable attorneys' fees) to be deemed to have been advanced to or for the benefit of the Borrower hereunder and secured by the Mortgage and the Loan Documents In pursuance of the foregoing, the Borrower hereby authorizes and grants to the Lender the right to do any of the following

i    Take possession of the Property, and complete the construction and installation of the Improvements substantially in accordance with the Plans and the Budget,

26

WCSR 3501184v2

ıı     Make such additions, changes and corrections in the Plans, which the Lender may deem necessary or desirable in its reasonable discretion to complete the Improvements in substantially the manner contemplated therein,

ıı     Employ such contractors, subcontractors, agents, engineers, architects, attorneys-at-law, inspectors, builders, laborers or other personnel to perform or cause to be performed any action reasonably desired by the Lender in order to complete the Improvements substantially in accordance with the Plans,

ıv     Use any funds of the Borrower on deposit with the Lender, all retainages heretofore retained by the Lender hereunder, and any sums then held in escrow, together with any balance of the Loan which has not previously been advanced hereunder, for any purpose consistent with any of the provisions hereof;

v     Pay, settle or compromise all existing or future bills, expenses or claims of any nature which are or may become liens against the Property or may be necessary or desirable as the Lender in its reasonable discretion deems proper, for the completion of the Improvements or for the protection or clearance of the title to the Property, or the Lender's interest therein,

vı.     Prosecute, defend, settle or compromise any action or proceeding at law or in equity or before any Governmental Authority involving the Loan, the Property, and/or the construction and installation of the Improvements thereon,

vıı     Execute in its name or, if necessary, in the name of the Borrower as its attorney-in-fact, all applications, certificates or instruments which may be necessary or desirable for the doing of any action which the Lender takes or causes to be taken hereunder,

vııı     Take such action and require such performance under any insurance coverage, bond or other obligation and execute, in its own or the Borrower's name, such applications for additional or renewal bonds, policies or other obligations as the Lender may deem advisable,

ıx     Do any and all acts which the Borrower might do in connection with the Property, the construction and installation of the Improvements, and the Loan

27

D      Costs and Expenses  All reasonable costs and expenses of every nature and kind incurred by the Lender in the exercise of any of the foregoing remedies, including without limitation reasonable attorneys' fees, shall be and constitute a portion of the Obligations, which shall be secured by the Mortgage and all of the Loan Documents.

E      No Waiver.  No delay or failure by the Lender to exercise any right or remedy conferred hereunder, and no making of any additional Advances after occurrence of any Event of Default hereunder, shall be deemed a waiver by the Lender of any future right to exercise such right or remedy or of any right to withhold any future Advance or of any other right or remedy provided herein, nor shall any waiver of any Event of Default be deemed to be a waiver of any other Event of Default or of the future occurrence of the same Event of Default

F      Nature of Remedies  All of the foregoing rights and remedies are cumulative and concurrent, shall be in addition to any other right, power and remedy set forth herein or in any of the Loan Documents, and now or hereafter existing in law at equity, or otherwise, and may be pursued separately, successively or concurrently against the Borrower and/or the Property at the sole discretion of the Lender

### ARTICLE EIGHT
### MISCELLANEOUS

8 1     ENTIRE AGREEMENT.  This Agreement supersedes all prior discussions between the Obligors and the Lender with respect to the Loan and contains the sole and entire understanding between the parties with respect to the Loan except for such other terms and conditions as may be set forth in the Loan Documents. No amendments, conditions, deletions, modifications or changes to or of this Agreement shall be of any force or effect whatsoever unless reduced to writing and executed by the parties hereto

8 2     SURVIVAL  All representations, warranties and covenants made herein shall survive the execution and delivery of this Agreement and the disbursement of the Loan, and shall remain in full force and effect until complete payment and discharge of all Obligations

8 3     SEVERABILITY  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but unenforceability or invalidity for any reason of any provision of this Agreement shall be limited strictly to such provision and shall not limit or impair the operation, validity or enforceability of any other provision of this Agreement

28

8 4    COUNTERPARTS    This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same Agreement.

8 5    TIME IS OF THE ESSENCE    Time is and shall be of the essence of this Agreement and all performance hereunder

8 6    RELATIONSHIP OF PARTIES    Neither any provision of this Agreement or any of the Loan Documents nor any acts of the parties to this Agreement or any of the Loan Documents shall be construed to create a partnership or joint venture between the Obligors or the Contractor and the Lender nor to make any party the agent or representative of the other, nor shall any provision hereof nor any acts of the parties hereunder be construed to make the Lender liable to anyone for any labor or services performed or rendered on, or materials supplied or furnished to, the Property or for any debts or claims accruing against the Borrower on account thereof Nothing in this Agreement shall be construed to create any privity of contract or other relationship between the Lender and anyone performing or rendering labor or services on, or supplying or furnishing materials to, the Property or for the construction or installation of the Improvements thereon In all respects the relationship of the Borrower and the Lender hereunder shall be solely that of debtor and creditor

8 7    NO THIRD PARTY BENEFICIARIES    All conditions to the obligations of the Lender to make Advances under this Agreement are imposed solely and exclusively for the benefit of the Lender Neither the Borrower, nor the Contractor, nor any other person shall have standing to require satisfaction of any such condition or be entitled to assume that the Lender will make or refuse to make Advances in the absence of strict compliance with any and all provisions hereof, and neither the Borrower, nor the Contractor, nor any other person shall, under any other circumstances, be deemed to be a beneficiary of any such conditions, any or all of which may be freely waived in whole or in part by the Lender at any time if in its sole discretion the Lender deems it advisable to do so  The Lender makes no representations or warranties and assumes no obligations or responsibility whatsoever with respect to the quality of the construction or installation of the Improvements

8 8    NOTICES    All notices, requests, demands and other communications allowed, made or required to be made pursuant to the terms of this Agreement shall be in writing and shall be deemed to be given or made when personally delivered (including personal delivery by Federal Express or other nationally recognized overnight private courier service) or when deposited in the United States mail, registered or certified, postage prepaid, return receipt requested, addressed in any such event to the party to whom such communication is directed at such address as is set forth for such party in the Loan Documents or at such other address as may hereafter be designated in writing by the respective parties hereto

29

8 9    GOVERNING LAW    This Agreement and all of the Loan Documents shall be governed and construed under and in accordance with the laws of the State of South Carolina, except to the extent provided otherwise in the Mortgage and the Contract Assignment

8 10    CONSENT TO JURISDICTION.    The Obligors, by execution of this Agreement, agree that any legal actions or proceedings with respect to this Agreement and, at the Lender's sole option, any other Loan Documents shall be subject to the jurisdiction of and shall be brought in any state or federal court of competent jurisdiction sitting in either the State of South Carolina or the State of Florida, to which jurisdictions and venues the Obligors hereby irrevocably consent by execution hereof. The Obligors each irrevocably waive any objection, including without limitation any objection to the laying of venue based on the grounds of forum non conveniens, which they or any of them may now or hereafter have to the bringing of any such action or proceeding in either such jurisdiction Nothing herein shall affect the right of the Lender to serve process in any manner permitted by law nor shall limit the right of the Lender to bring proceedings upon any other Loan Documents or against another party to any of the Loan Documents in the courts of any other jurisdiction

8 11    HEIRS, SUCCESSORS AND ASSIGNS    This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assigns, provided that the Borrower shall not assign or otherwise transfer voluntarily, involuntarily or by operation of law any rights, responsibilities, liabilities or Obligations hereunder except pursuant to the applicable provisions of the Mortgage and with the express written consent of the Lender as provided thereunder

8 12    PARTICIPATION.    The Borrower hereby acknowledges that the Lender may now or hereafter sell, assign, transfer or grant participation in, or otherwise dispose of all or portions of the Lender's rights, title and interest in and to the Loan, this Agreement and the Loan Documents, none of which shall be construed to alter or waive any Obligations whatsoever of the Obligors hereunder

8.13    CAPTIONS.    The headings and captions in this Agreement are included only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or the intent of any other provision hereof

WITNESSES:

BORROWER:

THREE AMIGOS LAND CO., LLC, a South
Carolina limited liability company

By _____

Its. _____MEMBER_____

GUARANTORS:

_____
GEORGE M. LEE, III

_____
WILLIAM J. DEGENHART

_____
PAUL V. DEGENHART

LENDER·

FIRST SAVERS BANK

By _____

Its _____

31

**EXHIBIT "A"**

**LEGAL DESCRIPTION OF PROPERTY**

**(Lot 22 and Tract C)**

Lot 22 and Tract C, as shown on the Plat of River City Marketplace according to the plat thereof as recorded in Plat Book 60, Pages 30 through 42 of the Public Records of Duval County, Florida.

A-1

**EXHIBIT "B"**
Development Costs Analysis

WCSR 3501184v2

## GUARANTY AGREEMENT

GUARANTOR      WILLIAM J. DEGENHART

BORROWER       THREE AMIGOS LAND CO., LLC

THIS GUARANTY AGREEMENT is made and granted by the undersigned **WILLIAM J. DEGENHART** (the "Guarantor"), whose address is 4720 Waters Avenue, Savannah, GA 31404, in order to induce **FIRST SAVERS BANK** (the "Lender"), whose address is 501 Roper Mountain Road, Greenville, South Carolina 29615, to extend certain credit to or for the benefit of **THREE AMIGOS LAND CO., LLC**, a South Carolina limited liability company (the "Borrower"), and is given in consideration of the benefits flowing to the Guarantor therefrom (which the Guarantor hereby acknowledges and agrees constitute fair and adequate consideration for this Guaranty) In consideration of the foregoing, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby covenants and agrees as follows

1)   GUARANTY OF OBLIGATIONS  Subject to the Limitations on Guaranty set forth hereinafter, the Guarantor irrevocably, unconditionally and absolutely guarantees to the Lender, its successors and assigns, the punctual payment and performance as and when due of the following-described indebtedness, liabilities, obligations and duties (collectively, the "Obligations")

(a)   All monies now or hereafter owed to the Lender that are evidenced by that certain Promissory Note from the Borrower to the Lender of even date in the original maximum principal sum of One Million Eight Hundred Thousand and No/100 ($1,800,000 00) Dollars (the "Note"), including without limitation, all principal, interest, late charges, prepayment charges, other charges, attorneys' fees, costs and expenses whatsoever actually incurred, becoming due to the Lender pursuant to the Note and any renewals, extensions, modifications and rearrangements of, and any and all substitutes and replacements for, the Note and any other indebtedness, liabilities, duties and obligations whatsoever now or hereafter evidenced by or pursuant to the Note, whether direct, indirect or contingent

(b)   All performance under and/or compliance with all terms, conditions, covenants, representations, warranties and provisions set forth in the Note and all Loan Documents (as defined in the Note) to be performed by or complied with on the part of the Borrower or any other guarantors thereof or parties thereunder, including without limitation, any renewals, extensions, modifications and rearrangements of, and any and all substitutes and replacements for any of the foregoing

(c)   All installation and construction through completion of all Improvements (as defined in the Loan Agreement) to be installed and constructed upon the Property (as defined in the Loan Agreement) pursuant to and in compliance with the Construction Documents and all applicable Governmental Requirements (as said terms are defined in the Loan Agreement)

1

WCSR 3499457v2

(d)     All costs or expenses incurred, or advances made, by Lender, including without limitation court costs and attorneys fees actually incurred, to preserve the priority, validity or amount of any collateral now or hereafter existing as security for the Note.

(e)     All monies now or hereafter owed to the Lender pursuant to and all performance under and/or compliance with this Guaranty, and the terms, provisions, covenants and warranties contained herein, and any renewals, extensions, modifications and rearrangements of, and any and all substitutes for, this Guaranty including without limitation all costs, expenses and attorneys fees actually incurred by the Lender in the enforcement of this Guaranty and the preservation of the Lender's rights hereunder

2)     NATURE OF GUARANTY  This Guaranty constitutes an irrevocable, unconditional, absolute, present and continuing guaranty of payment and performance and not a guaranty of collection  The Guarantor, without limitation on its obligations hereunder, agrees that it is liable for payment of the Obligations as a primary obligor of the Borrower  The obligations of the Guarantor hereunder shall not be subject to any counterclaim, setoff, deduction or other defense existing or claimed now or hereafter by or on behalf of the Borrower, any other guarantor of the Note or any other person or entity whomsoever, whether such setoff, counterclaim, deduction or defense arises in connection with the Obligations, the transactions creating the Obligations, or otherwise, nor, except as otherwise expressly provided herein, shall this Guaranty be reduced, released, discharged, diminished, impaired, or adversely affected, in whole or in part, by any of the foregoing  The Guarantor may not revoke this Guaranty and this Guaranty shall remain in full force and effect after any attempted revocation by the Guarantor, and shall remain in full force and effect until all of the Obligations shall have been paid, performed and satisfied in full

3)     CONSENTS  The Guarantor consents to and agrees that its Obligations hereunder shall not, except as otherwise expressly stated herein, be released, discharged, impaired, diminished, reduced, or otherwise affected by any act, event, happening, occurrence, circumstance, condition, matter or thing whatsoever, including without limitation all such items as are set forth hereinafter (whether occurring before, during or after the occurrence of any event of default under the Note or any Loan Document, and whether or not the Guarantor shall have any knowledge or notice thereof or have given its consent thereto), and further waives any and all rights (including without limitation rights to notice) which the Guarantor might otherwise have arising out of or as a result of, any of the following

(a)     All renewals, extensions, continuations, modifications, supplements, amendments, exchanges, alterations, rearrangements, waivers, compromise, termination, release or surrender of any or all of the Obligations, any or all of the Loan Documents, and any or all written agreements pertaining to all or any part of the Obligations, whether in whole or in part,

(b)     All adjustments, indulgences, postponements, forbearances and compromises granted or given by the Lender to the Borrower or any other person,

2

(c)     The death, insolvency, bankruptcy, liquidation, disability, reorganization, dissolution or lack of power of any person, including, without limitation, the Borrower and the Guarantor, and any sale, lease or transfer of any or all of the assets of any person including, without limitation, the Borrower and the Guarantor;

(d)     The invalidity, illegality or unenforceability of all or any part of the Obligations, or any one or more agreements connected therewith, for the following reasons (1) the Obligations, or any part thereof, may exceed the amount permitted by law, (2) the act of creating the Obligations or any part thereof may be ultra vires, (3) the officers, partners, members, managers, or representatives executing the Note or other documents evidencing or pertaining to the Obligations or any part thereof acted in excess of their authority, (4) the Obligations or any part thereof may violate applicable usury law, (5) the Borrower may have valid defenses, claims or offsets (whether at law, in equity or by agreement) which may render the Obligations or any part thereof wholly or partially unenforceable or uncollectible from the Borrower, (6) the creation, performance or repayment of the Obligations (or the execution, delivery and performance of any one or more agreements connected with the Obligations) may be uncollectible, legally impossible or unenforceable, or (7) any notes or other agreements pertaining to the Obligations or any part thereof may have been forged by the Borrower or the Guarantor

(e)     Any full or partial release of the Borrower or any other persons, from liability for payment or performance of the Obligations or any part thereof,

(f)     The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for any of the Obligations,

(g)     Any release, surrender, exchange, subordination, disposition, deterioration, waste, loss or impairment (including, without limitation, negligent, willful, unreasonable or unjustifiable impairment, unless due to willful acts or gross negligence of the Lender) of any collateral, property or security, at any time existing in connection with, or securing payment of, any of the Obligations,

(h)     Failure by the Lender or any other person to exercise diligence, commercial reasonableness or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security,

(i)     The Lender's failure to obtain or perfect any security interest, lien or other guaranty agreement,

(j)     The determination or adjudication that any payment on any of the Obligations constitutes a preference under bankruptcy laws, or the requirement for any reason that the Lender must refund or relinquish such payment;

(k)     Any lack of disclosure to the Guarantor of any information,

3

(1)     Any sale, assignment, transfer, endorsement or granting of any interest, in whole or in part, by the Lender of the Note or any of the Loan Documents,

(m)     Any failure of consideration or failure of the Guarantor to receive or realize any or all of the benefits expected or contemplated by virtue of this Guaranty; and

(n)     Any other action or omission with respect to all or any part of the Obligations, or the security and collateral therefor, whether or not such action or omission prejudices the Guarantor or increases the likelihood that the Guarantor will be required to pay all or any part of the Obligations, it being the unambiguous and unequivocal intention of the Guarantor that the Guarantor be obligated to pay and perform the Obligations if the Obligations are not punctually paid and performed when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether or not contemplated, and whether or not specifically described herein

Notwithstanding the foregoing, the Guarantor does not waive or release (expressly or impliedly) any rights of subrogation, reimbursement or contribution which it may have, after payment in full of the Obligations, against others liable on the Obligations, provided, that the Guarantor's rights of subrogation and reimbursement shall be, and at all times remain subordinate to Lender's rights and claims.

4)     WAIVERS  The Guarantor hereby absolutely, unconditionally and irrevocably waives, to the fullest extent permitted by law, the following

(a)     Any requirement that prior to making demand for payment or seeking to enforce any right or remedy under this Guaranty, the Lender first make demand upon, make claim against or take any action with respect to the Borrower or any other persons, or resort to or seek to exhaust any collateral, or seek to enforce any other right or remedy in any of the Loan Documents or resort to any other means available by law or in equity for obtaining payment of the Obligations,

(b)     Diligence, presentment, demand, protest, notice of acceptance, notice of dishonor, notice of protest and any other notice of any other kind;

(c)     Any right of subrogation to any right of the Borrower and any other right to reimbursement, indemnity or other recourse against the Borrower or any other person,

(d)     Any right or benefit (whether directly or through the Borrower or any other persons) under any appraisement, valuation, stay, extension or redemption laws, and

(e)     Any right to require marshalling of any collateral

5)     SUBORDINATION OF GUARANTOR CLAIMS.  Until the Obligations are paid in full and the Guarantor's liability hereunder has been released and discharged, the Guarantor

4

WCSR 3499457v2

covenants and agrees that it shall not claim, seek, sue for, receive or collect, directly or indirectly, from the Borrower or any other person any other material obligations, indebtedness, liabilities or duties owed or claimed to be owed by the Borrower or such other person to the Guarantor (the "Guarantor Claims"), including without limitation all rights and claims of the Guarantor against the Borrower or such person arising by way of subrogation or otherwise, whether direct or indirect, primary or secondary, joint, several or joint and several, fixed or contingent, whether acquired by the Guarantor in a transaction with the Borrower or in a transaction with one or more other persons, whether originally owed to the Guarantor or owed to other persons, whether resulting from the Guarantor's payment of all or any part of the Obligations, and whether arising in connection with or evidenced by notes, advances, bookkeeping entries, guaranty agreements, liens, security interest agreements, or any other method or means, and whether evidenced by liens, security interests, or other encumbrances of any nature, all of which Guarantor Claims shall be inferior and subordinate to all liens, security interests and other encumbrances upon the assets of the Borrower or such other person which shall secure the payment of the obligations, regardless of whether such encumbrances arise in favor of the Guarantor or the Lender and whether presently existing and hereafter arising The Guarantor covenants and agrees that it shall not exercise and enforce any creditor's rights it may have against the Borrower or such other party, or foreclose or repossess, claim, or otherwise take steps or institute any actions or proceedings (judicial or otherwise, including without limitation, the commencement of or joinder in any liquidation, bankruptcy, rearrangement, debtors relief or other insolvency proceeding) to enforce any liens, security interests or other encumbrances on any of the assets of the Borrower or such other person so long as the Obligations remain outstanding The Guarantor further covenants and agrees that the Lender may prove its claim for outstanding Obligations in any receivership, bankruptcy, reorganization, rearrangement, debtors relief or other insolvency proceeding in which the Borrower or such other party is a debtor so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian, dividends and payments which would otherwise be payable upon Guarantor Claims, and in this connection the Guarantor hereby assigns to the extent of the outstanding Obligations such dividends and payments to the Lender and agrees that, with respect to the remainder of the Guarantor Claims, the Guarantor's rights shall be subordinate to the Lender's rights and claims If the Lender receives, for application upon the Obligations, any such dividends or payments which, as between the Borrower and the Guarantor, constitute payments on the Guarantor Claims, then upon full payment of the Obligations to the Lender, the Guarantor shall be subrogated to the rights of the Lender to the extent that payments to the Lender on the Guarantor Claims have contributed to satisfaction of the Obligations; and such subrogation shall be in respect to that portion of the Obligations which would have been unpaid if the Lender had not received dividends or payments upon the Guarantor Claims

6)    REPRESENTATIONS AND WARRANTIES  The Guarantor hereby represents and warrants to the Lender that·

(a)    As of the execution hereof, nothing exists to impair the effectiveness of this Guaranty or its immediate and continuing effectiveness,

(b)    The Guarantor has received, or will receive, direct or indirect benefit and fair consideration in making this Guaranty,

5

(c)     To the extent desired by the Guarantor, the Guarantor is familiar with the books and records regarding the Borrower's financial condition and the value of all collateral intended as security for payment of any of the Obligations, however, the Guarantor is not relying on such financial condition or collateral in making this Guaranty;

(d)     No person has made any representation, warranty or statement to the Guarantor to induce the Guarantor to make this Guaranty;

(e)     This Guaranty is the legal and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its terms

7)     EFFECT OF BANKRUPTCY  If, pursuant to any bankruptcy, insolvency or other debtor relief, laws or rules, or any judgment or order or decision thereunder, any payment received by the Lender shall be adjudicated as a voidable preference or the Lender must otherwise rescind or restore any amount taken, credited or received by the Lender in payment or satisfaction by any of the Obligations, any prior release or discharge by the terms of this Guaranty given by the Lender shall be without effect and this Guaranty shall remain in full force and effect  The Guarantor's Obligations hereunder shall not be discharged except by the Guarantor's performance of those Obligations and then only to the extent of such performance

8)     DEFAULT. The term "Event of Default", whenever used hereinafter, shall mean any one or more of the following events·

(a)     ' Occurrence of an Event of Default set forth or defined in the Note or in any of the Loan Documents, including a breach of any of the terms or conditions of this Guaranty, which is not cured within any applicable grace period, if any, set forth herein or therein,

(b)     Subject to the Borrower's ability to produce a replacement guarantor acceptable to the Lender in its sole discretion within the applicable cure period, the entry of any judgment against the Guarantor or the attachment, levy or garnishment against any property of the Guarantor which in the sole judgment of the Lender would materially and adversely affect the Guarantor's ability to perform its Obligations under this Guaranty and which remains unsatisfied for a period of sixty (60) days after the filing or issuance of the same, or the occurrence of any other substantial change in the financial condition of the Guarantor which, in the reasonable judgment of the Lender, is materially adverse, unless in either event a substitute guarantor satisfactory to the Lender is offered to the Lender;

(c)     Except as permitted in the Loan Documents, any transfer, sale, conveyance, disposition or assignment of the ownership interest or management rights of the current shareholders of the Guarantor, whether voluntary, involuntary, or by operation of law, without the express prior written consent of the Lender, and

6

(d)    The death of the Guarantor, unless the Borrower shall produce and deliver to the Lender an acceptable substitute guarantor within the applicable cure period

9)    REMEDIES  Upon occurrence of any Event of Default, the Lender may take any or all of the following actions without any requirement of demand for payment or performance on the part of the Borrower or any other persons whomsoever and without requirement of resort to any collateral for any of the Obligations or to any other means of obtaining payment or performance of any of the Obligations, as follows

(a)    The Lender may declare all of the Obligations, regardless of their terms and including the Guarantor's Obligations hereunder, immediately due and payable and that performance thereof is immediately required,

(b)    The Lender may accelerate all or any part of the Obligations and require full payment and performance thereof by the Guarantor,

(c)    The Lender shall have the right of setoff against, a lien upon and a continuing security interest in all instruments, documents, securities, cash or other property, and all proceeds of the foregoing, which may now or hereafter be owned by the Guarantor which may become in possession or control of the Lender or any other party acting on the Lender's behalf, directly or indirectly, regardless of the capacity in which the Lender may receive, hold or control the same,

(d)    The Lender shall have all of the rights and remedies afforded to it under the Note and the Loan Documents or otherwise existing at law or in equity

10)    NATURE OF REMEDIES  The remedies provided herein, in the Note, and in all other Loan Documents shall be cumulative and none is exclusive and such remedies shall be exercised concurrently or consecutively at the option of the Lender  Any waiver, failure, or delay by the Lender in exercising any remedy provided herein, in the Note or in any Loan Document upon occurrence of any Event of Default, shall not constitute a waiver of such right or remedy or preclude its future exercise or that of any other right of remedy in the event of any subsequent default, whether of the same or different nature  No notice to or demand on the Guarantor by the Lender shall be deemed to be a waiver of the Lender's right to take other or further action and in no event shall any waiver or right, power or remedy of the Lender hereunder be effective unless the same is in writing and signed by the Lender

11)    SEVERABILITY  The invalidity, illegality or unenforceability of any provision of this Guaranty or in the Note or any of the Loan Documents shall not render invalid, illegal or unenforceable any other provision hereof

12)    SURVIVAL.  All covenants, agreement, representations, and warranties of the Guarantor contained herein and in any document or item delivered pursuant hereto shall survive the execution hereof and continue and remain in full force and effect until the Obligations have been paid, performed and satisfied in full

7

13)  ENTIRE AGREEMENT  This Guaranty contains the entire agreement and understanding between the Guarantor and the Lender with respect to the subject matter hereof, and supersedes all prior agreements and understandings, whether oral or written

14)  GOVERNING LAW  This Guaranty shall be governed and construed in accordance with the internal laws of the State of South Carolina, without regard to any choice of law or conflict of law provisions which might apply the law of another jurisdiction

15)  CONSENT TO JURISDICTION  The Guarantor, by its execution hereof, agrees that any action or proceeding which the Lender may initiate with respect to this Guaranty shall, at the Lender's sole option, be brought in and subject to the jurisdiction of any state or federal court of competent jurisdiction of the State of South Carolina or the State of Florida, to which jurisdictions the Guarantor, by its execution hereof, hereby irrevocably consents Notwithstanding the foregoing, however, the Guarantor additionally acknowledges and agrees that the Lender may initiate any action upon or for the enforcement of this Guaranty in conjunction with or as a part of any action which the Lender shall initiate upon or for the enforcement of the Mortgage, Security Agreement, and Fixture Financing Statement from the Borrower to the Lender  The Guarantor irrevocably waives any objection, including without limitation any objection to the laying of venue based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any such action or proceeding in either such jurisdiction  Nothing herein shall affect the right of the Lender to serve process in any manner permitted by law nor shall limit the right of the Lender to bring proceedings against another party to any of the Loan Documents in the courts of any other jurisdiction

16)  NOTICE  All notices made or required hereunder shall be in writing  The Effective Date of Notice shall be the date upon which such notice shall have been personally delivered (including personal delivery by Federal Express or other nationally recognized overnight private courier service) or the date of postmark when deposited in the United States Mail, registered or certified, postage prepaid, return receipt requested, addressed in any such event, to the Lender or the Guarantor at the address set forth hereinafter, or at such other addresses as may hereafter be designated in writing

17)  LIMITATIONS ON GUARANTY  Notwithstanding anything contained in this Guaranty or in any other Loan Document to the contrary, the liability of the Guarantor hereunder shall be limited to the principal sum of Four Hundred Fifty Thousand and no/100 ($450,000 00) Dollars, plus any and all outstanding unpaid interest due to the Lender under the Note, plus any loss, liability or damage to or sustained by the Lender arising at any time during the pendency of this Guaranty from the following

   (a)  any fraudulent or material misrepresentation by the Borrower or the Guarantor in connection with the execution, delivery, contents, or performance of the Loan Documents;

   (b)  the misappropriation by the Borrower or the Guarantor of any insurance or condemnation proceeds attributable to any such collateral,

8

      (c)     the misappropriation by the Borrower or the Guarantor of any rentals assigned to the Lender following written notification by the Lender to the Borrower of the occurrence of an Event of Default under the Loan Documents,

      (d)     the intentional violation by the Borrower or the Guarantor of any representations, covenants or agreements contained in the Loan Documents with respect to environmental matters,

      (e)     the violation by the Borrower, following the occurrence of an Event of Default, of any indemnification obligations contained in the Loan Documents which arise out of any matters enumerated in subsections (a) through (f) of this paragraph,

      (f)     the violation by the Borrower, following the occurrence of an Event of Default, of any prohibitions contained in the Loan Documents against transfer of the Borrower's property identified in the Note, or of any interests in the Borrower; and

      (g)     all court costs and reasonable attorneys' fees incurred by the Lender in connection with any claims asserted by or against the Lender on account of this Guaranty.

Executed as of the   **20**   day of December, 2006

Witnesses

_____

_____

_____
**WILLIAM J. DEGENHART**

9



**FIRST
SAVERS
BANK**
A Division of
Plantation Federal Bank

January 2, 2009

Three Amigos Land Co , LLC
c/o George Lee
Professional Realty Inc
8910 Two Notch Rd  Ste  302
Columbia, SC 29223

RE   $1 8MM Development Loan Modification

Dear Gentlemen

This Letter represents a modification of your original Commitment Letter dated **December 1, 2006**

All terms & conditions will remain the same except the following

      1)  Loan Term change from December 10, 2008 **Maturity Date to April 2, 2009 Maturity Date**
      2)  Interest rate change from LIBOR  + 2 50% to WSJ Prime + 1% with 5 50% Floor

Upon reaching the new maturity date of April 2, 2009, borrower may be subject to additional changes in loan terms in order to further renew a loan agreement with the Bank

This correspondence and all documents related to this loan commitment are privileged information between First Savers Bank and the recipient only   Please contact me directly with any questions or concerns

Sincerely,

Jeff McGehee
Vice President
Commercial Real Estate Lending
First Savers Bank
*A Division of Plantation Federal Bank*

Each of the undersigned hereby accepts the Modification to the Loan Commitment set forth above, subject to the terms and conditions set forth therein, this _____ day of January, 2009.

AS BORROWER(S)/GUARANTOR(S) FOR *Three Amigos Land Co , LLC*

By _____
    Mr George M Lee, III, Member

By _____
    Mr William J Degenhart, Member

By _____
    Mr Paul V Degenhart, Member

| LOAN NUMBER | LOAN NAME | ACCT NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 101 | Three Amigos Land Co LLC | 8800010994 | 01/02/09 | JJM |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $1 800 000 00 | Wall Street Journal Prime plus 1 000% | 5 500% | 04/02/09 | Commercial |
|  |  | Creditor Use Only |  |  |

## PROMISSORY NOTE
(Commercial - Draw)
RENEWAL NOTE
State of Florida s Documentary Stamp is not required on this Note

DATE AND PARTIES   The date of this Promissory Note (Note) is January 2  2009   The parties and their addresses are

LENDER
PLANTATION FEDERAL BANK
AS SUCCESSOR TO FIRST SAVERS BANK
935 South Main Street, Suite 300
Greenville  SC  29601
Telephone  (864) 477 2660

BORROWER
THREE AMIGOS LAND CO LLC
a South Carolina Limited Liability Company
8910 Two Notch Rd  Ste 302
Columbia  SC 29223

1  DEFINITIONS   As used in this Note  the terms have the following meanings

A  Pronouns  The pronouns "I " me " and "my" refer to each Borrower signing this Note  individually and together   "You" and  Your  refer to the Lender

B  Note  Note refers to this document  and any extensions  renewals  modifications and substitutions of this Note

C  Loan   Loan refers to this transaction generally  including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications  security agreements, disclosures or notes  and the Note

D  Loan Documents  Loan Documents refer to all other documents executed as a part of or in connection with the Loan

E  Property  Property is any property  real, personal or intangible  that secures my performance of the obligations of this Loan

F  Percent  Rates and rate change limitations are expressed as annualized percentages

2  RENEWAL   This Note is a renewal of the following described note

| Note Date | Note Number | Note Amount |
|---|---|---|
| December 22  2008 | # 8800010994  101 | $1 800 000 00 |

I have requested that the note listed in the table above be renewed   The remaining balance of the note listed in the table above is $1 753,019 48

3  PROMISE TO PAY   For value received  I promise to pay you or your order, at your address  or at such other location as you may designate  amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $1 800 000 00 (Principal)  plus interest from the date of disbursement  on the unpaid outstanding Principal balance until this Note is paid in full and you, have no further obligations to make advances to me under the Loan

All advances made will be made subject to all other terms and conditions of the Loan

4  INTEREST   Interest will accrue on the unpaid Principal balance of this Note at the rate of 5 500 percent (Interest Rate) until January 1, 2009  after which time it may change as described in the Variable Rate subsection

A  Post Maturity Interest   After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time  until paid in full

B  Maximum Interest Amount   Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law  whichever is greater  Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance  Any remainder will be refunded to me

C  Statutory Authority   The amount assessed or collected on this Note is authorized by the South Carolina usury laws under S C  Code Ann   §§ 37-3 605  37 3 105 and 37 10-101 et seq

D  Accrual  Interest accrues using an Actual/360 days counting method

E  Variable Rate   The Interest Rate may change during the term of this transaction

(1) Index  Beginning with the first Change Date  the Interest Rate will be based on the following index  the base rate on corporate loans posted by at least 75% of the 30 largest U S  banks known as the Wall Street Journal U S  Prime Rate

The Current Index is the most recent index figure available on each Change Date  You do not guaranty by selecting this Index  or the margin  that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers  If this Index is no longer available, you will substitute a similar index  You will give me notice of your choice

(2) Change Date  Each date on which the Interest Rate may change is called a Change Date  The Interest Rate may change January 3  2009 and daily thereafter

Three Amigos Land Co LLC
South Carolina Promissory Note
SC/4Xdbailey00084600062430211123108N                ©1996 Bankers Systems  Inc  St  Cloud  MN ExpＳ      Page 1

(3) Calculation Of Change  On each Change Date you will calculate the Interest Rate  which will be the Current Index plus 1 000 percent  The result of this calculation will be rounded to the nearest  001 percent  Subject to any limitations, this will be the Interest Rate until the next Change Date  The new Interest Rate will become effective on each Change Date  The Interest Rate and other charges on this Note  will never exceed the highest rate or charge allowed by law for this Note

(4) Limitations  The Interest Rate changes a e subject to the following limitations

(a) Lifetime  The Interest Rate will never be less than 5 500 percent

(5) Effect Of Variable Rate  A change in the Interest Rate will have the following effect on the payments  The amount of scheduled payments and the amount of the final payment will change

5  REMEDIAL CHARGES  In addition to interest or other finance charges I agree that I will pay these additional fees based on my method and pattern of payment  Additional remedial charges may be described elsewhere in this Note

A  Late Charge  If a payment is more than 15 days late I will be charged 5 000 percent of the Amount of Payment  I will pay this late charge promptly but only once for each late payment

6  GOVERNING AGREEMENT  This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified  amended or supplemented  The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated  When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement

7  PAYMENT  I agree to pay this Note in installments of accrued interest beginning February 2  2009, and then on the 2nd day of each month thereafter  I agree to pay the entire unpaid Principal and any accrued but unpaid interest on April 2  2009

Payments will be rounded to the nearest $ 01  With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf  Payments scheduled to be paid on the 29th  30th or 31st day of a month that contains no such day will  instead  be made on the last day of such month

Each payment I make on this Note will be applied first to interest that is due then to principal that is due and finally to any charges that I owe other than principal and interest  If you and I agree to a d fferent application of payments  we will describe our agreement on this Note  You may change how payments are applied in your sole d scretion without notice to me  The actual amount of my final payment will depend on my payment record

8  PREPAYMENT  I may prepay this Loan in full or in part at any time  Any partial prepayment will not excuse any later scheduled payments until I pay in full

9  LOAN PURPOSE  This is a business purpose loan transaction

10  SECURITY  The Loan is secured by previously executed  separate security instruments described as follows

| Description | Date |
| --- | --- |
| Mor gage  Security Agreement and Fixture Financing Statement  UCC 1  Assignment of Contracts Contract Rights Leases Rents and Profits | December 22  2006 |

11  DUE ON SALE OR ENCUMBRANCE  You may  at your option  declare the entire balance of this Note to be immediately due and payable upon the creation of  or contract for  the creation of any lien  encumbrance  transfer or sale of all or any part of the Property  This right is subject to the restric ons imposed by federal law (12 C F R  591) as applicable

12  WAIVERS AND CONSENT  To the extent not prohibited by law  I waive protest, presentment for payment  demand  notice of acceleration  notice of intent to accelerate and notice of dishonor

A  Additional Waivers By Borrower  In addition  I  and any party to this Note and Loan  to the extent permitted by law  consent to certain actions you may take  and generally waive defenses that may be available based on these actions or based on the status of a party to this Note

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions

(2) You may release any Borrower  endorser  guarantor  surety  accommodation maker or any other co signer

(3) You may release  substitute or impair any Property securing this Note

(4) You  or any institution participating in this Note  may invoke your right of set off

(5) You may enter into any sales  repurchases or participations of this Note to any person in any amounts and I waive notice of such sales  repurchases or participations

(6) I agree that any of us signing this Note as a Borrower  is authorized to modify the terms of this Note or any instrument securing  guarantying or relating to this Note

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations  renewals  extensions, modifications  substitutions or future advances

B  No Waiver By Lender  Your course of dealing  or your forbearance from  or delay in, the exercise of any of your rights  remedies  privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you  unless any such waiver  s in writing and is signed by you

13  COMMISSIONS  I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products  and may earn such fees on other services that I buy through you or your affiliate

14  APPLICABLE LAW  This Note is governed by the laws of South Carolina, the United States of America  and  to the extent required  by the laws of the jurisdiction where the Property is located  except to the extent such state laws are preempted by federal law

15  JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS  My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it  You  may sue me alone  or anyone else who  s obligated on the Loan or any number of us together  to collect the Loan  Extending the Loan or new obligations under the Loan  will not affect my duty under the Loan and I will still be obligated to pay the Loan  This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors  heirs and assigns

16  AMENDMENT  INTEGRATION AND SEVERABILITY  This Note may not be amended or modified by oral agreement  No amendment or modification of this Note is effective unless made in writing and executed by you and me  This Note and the other Loan Documents are the complete and final expression of the agreement  If any provision of this Note is unenforceable  then the unenforceable provision will be severed and the remaining provisions will still be enforceable

Three Amigos Land Co LLC
South Carolina Promissory Note
SC/4Xdbxlsv00084600005243021123108N                    ©1996 Bankers Systems, Inc  St Cloud MN  ExpereL                    Page 2

No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007

**17 INTERPRETATION** Whenever used, the singular includes the plural and the plural includes the singular The section headings are for convenience only and are not to be used to interpret or define the terms of this Note

**18 NOTICE FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS** Unless otherwise required by law any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section or to any other address designated in writing Notice to one Borrower will be deemed to be notice to all Borrowers I will inform you in writing of any change in my name address or other application information I agree to sign deliver and file any additional documents or certifications that you may consider necessary to perfect continue and preserve my obligations under this Loan and to confirm your lien status on any Property Time is of the essence

**19 CREDIT INFORMATION** I agree to supply you with whatever information you reasonably request You will make requests for this information without undue frequency and will give me reasonable time in which to supply the information

**20 ERRORS AND OMISSIONS** I agree if requested by you to fully cooperate in the correction if necessary in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me I agree to assume all costs including by way of illustration and not limitation, actual expenses legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days

**21 AGREEMENT TO ARBITRATE** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute) except as otherwise indicated in this section or as you and I agree to in writing For purposes of this section this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws

You and I must consent to arbitrate any Dispute concerning any debt secured by real estate at the time of the proposed arbitration You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before during or after any arbitration You may also enforce a debt secured by this real property and underlying the Dispute before during or after any arbitration

You or I may whether or not any arbitration has begun, pursue any self-help or similar remedies including taking property or exercising other rights under the law seek attachment garnishment receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me, or foreclose against any property by any method or take legal action to recover any property Foreclosing or exercising a power of sale beginning and continuing a judicial action or pursuing self help remedies will not constitute a waiver of the right to compel arbitration

The arbitrator will determine whether a Dispute is arbitrable A single arbitrator will resolve any Dispute whether individual or joint in nature or whether based on contract, tort or any other matter at law or in equity The arbitrator may consolidate any Dispute with any related disputes claims or other matters in question not arising out of this Transaction Any court having jurisdiction may enter a judgment or decree on the arbitrator s award The judgment or decree will be enforced as any other judgment or decree

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce The United States Arbitration Act will govern the interpretation and enforcement of this section

The American Arbitration Association s Commercial Arbitration Rules in effect on the date of this Note will govern the selection of the arbitrator and the arbitration process unless otherwise agreed to in this Note or another writing

**22 WAIVER OF TRIAL FOR ARBITRATION** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury but that the parties prefer to resolve Disputes through arbitration instead of litigation If any Dispute is arbitrated you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration

**23 SIGNATURES** By signing under seal I agree to the terms contained in this Note I also acknowledge receipt of a copy of this Note

BORROWER

Three Amigos Land Co LLC

By _____ (Seal)
George McLee III Member

By _____ (Seal)
William A Degenhart Member

By _____ (Seal)
Paul V Degenhart Member

| LOAN NUMBER | LOAN NAME | ACCT NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| 101 | Three Amigos Land Co LLC | 6800010884 | 01/02/09 | JJM |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $1 800 000 00 | Wall Street Journal Prime plus 1 000% | 5 500% | 04/02/09 | Commercial |
| | | Creditor Use Only | | |

# COMMERCIAL LOAN AGREEMENT

Draw Loan

**DATE AND PARTIES** The date of this Commercial Loan Agreement (Agreement) is January 2 2009 The parties and their addresses are as follows

LENDER
**PLANTATION FEDERAL BANK**
**AS SUCCESSOR TO FIRST SAVERS BANK**
935 South Main Street Suite 300
Greenville SC 29601

BORROWER
**THREE AMIGOS LAND CO LLC**
a South Carolina Limited Liability Company
8910 Two Notch Rd Ste 302
Columbia SC 29223

1 **DEFINITIONS** *For the purposes of this Agreement the following terms have the following meanings*

A **Accounting Terms** In this Agreement any accounting terms that are not specifically defined will have their customary meanings under generally accepted accounting principles

B **Insiders** *Insiders include those defined as insiders by the United States Bankruptcy Code as amended, or to the extent left undefined* include without limitation any officer employee stockholder or member director partner, or any immediate family member of any of the foregoing, or any person or entity which directly or indirectly controls, is controlled by or is under common control with me

C **Loan** The Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction

D **Loan Documents** Loan Documents refer to all the documents executed as a part of or in connection with the Loan

E **Pronouns** The pronouns I" "me" and "my refer to every Borrower signing this Agreement individually or together You and "your" refers to the Loan s lender

F **Property** Property is any property, real personal or intangible, that secures my performance of the obligations of this Loan

2 **ADVANCES** *Advances under this Agreement are made according to the following terms and conditions*

A **Multiple Advances** In accordance with the terms of this Agreement and other Loan Documents you will provide me with a draw note and the maximum total principal balance *will not exceed $1 800 000 00 (Principal)*

B *Requests for Advances My requests are a warranty that I am in compliance with all the Loan Documents* When required by you for a particular method of advance my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents and instruments that you require for the Loan Any payment by you of any check share draft or other charge may at your option, constitute an advance on the Loan to me *All advances will be made in United States dollars* I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person s signature is not genuine

I or anyone I authorize to act on my behalf may request advances by the following methods

(1) I make a request in person

(2) I make a request by phone

C **Advance Limitations** In addition to any other Loan conditions, requests for, and access to advances are subject to the following limitations

(1) Discretionary Advances You will make all Loan advances at your sole discretion

(2) Advance Amount Subject to the terms and conditions contained in this Agreement advances will be made in exactly the amount I request

(3) Disbursement of Advances On my fulfillment of this Agreement s terms and conditions you will disburse the advance in any manner as you and I agree

(4) Credit Limit I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit You may at your option grant such a request without obligating you selves to do so in the future I will pay any over advances in addition to my regularly scheduled payments I will repay any over advance by repaying you in full within 10 days after the overdraft occurs

(5) Records Your records will be conclusive evidence as to the amount of advances the Loan s unpaid principal balances and the accrued interest

D **Conditions** I will satisfy all of the following conditions before you either issue any promissory notes or make any advances under this Agreement

(1) No Default There has not been a default under this Agreement or any other Loan Documents nor would a default result from making the Loan or any advance

(2) Information You have received all documents information certifications and warranties as you may require, all properly executed if appropriate, on forms acceptable to you This includes but is not limited to the documents and other items listed in the Loan Checklist Report which is hereby incorporated by reference into this Agreement

(3) Inspections You have made all inspections that you consider necessary and are satisfied with this inspection

(4) Conditions and Covenants   I will have performed and complied with all conditions required for an advance and all covenants in this Agreement and any other Loan Documents

(5) Warranties and Representations   The warranties and representations contained in this Agreement are true and correct at the time of making the requested advance

(6) Financial Statements   My most recent financial statements and other financial reports, delivered to you, are current, complete, true and accurate in all material respects, and fairly represent my financial condition

(7) Bankruptcy Proceedings   No proceeding under the United States Bankruptcy Code has been commenced by or against me or any of my affiliates

**3  MATURITY DATE**  I agree to fully repay the Loan by April 2, 2008

**4  EXTENSION**  The Loan may be extended for periods subject to the following conditions

A  In Compliance   No default exists under this Agreement or the other Loan Documents

B  Interest Rate Adjusted   You and I agree in writing on the extension period's interest rate

**5  WARRANTIES AND REPRESENTATIONS**  I make to you the following warranties and representations which will continue as long as this Loan is in effect except when this Agreement provides otherwise

A  Power   I am duly organized and validly existing and in good standing in all jurisdictions in which I operate  I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate

B  Authority   The execution, delivery and performance of this Loan and the obligation evidenced by the Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject

C  Name and Place of Business   Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name  Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises

D  Hazardous Substances   Except as I previously disclosed in writing and you acknowledge in writing, no Hazardous Substance, underground tanks, private dumps or open wells are currently located on or in, under or about the Property

E  Use of Property   After diligent inquiry I do not know or have reason to know that any Hazardous Substance has been discharged, leached or disposed of in violation of any Environmental Law from the property onto, over or into any other property or from any other property onto, over or into the property

F  Environmental Laws   I have no knowledge or reason to believe that there is any pending or threatened investigation, claim, judgment or order, violation, lien, or other notice under any Environmental Law that concerns me or the property  The property and my activities on the property are in full compliance with all Environmental Law

G  Loan Purpose   This is a business purpose loan transaction

H  No Other Liens   I own or lease all property that I need to conduct my business and activities  I have good and marketable title to all property that I own or lease  All of my Property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those to you or those you consent to in writing

I  Compliance With Laws   I am not violating any laws, regulations, rules, orders, judgments or decrees applicable to me, or my property, except for those which I am challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should I lose

J  Legal Dispute   There are no pending or threatened lawsuits, arbitrations or other proceedings against me or my property that singly or together may materially and adversely affect my property, operations, financial condition or business

K  Adverse Agreements   I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations

L  Other Claims   There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents  No outstanding claims or rights exist that may result in a lien on the Property, the Property's proceeds and the proceeds of proceeds, except liens that were disclosed to and agreed to by you in writing

M  Solvency   I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities  I will not become insolvent by the execution or performance of this Loan

**6  FINANCIAL STATEMENTS**  I will prepare and maintain my financial records using consistently applied generally accepted accounting principles then in effect  I will provide you with financial information in a form that you accept and under the following terms

A  Certification   I represent and warrant that any financial statements that I provide you fairly represents my financial condition for the stated periods is current, complete, true and accurate in all material respects, includes all of my assets and contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared

B  Frequency   Annually, I will provide to you my financial statements, tax returns, annual internal audit reports or those prepared by independent accountants as soon as available or at least within   days after the close of each of my fiscal years  Any annual financial statements that I provide you will be prepared statements

C  Rent Roll and Vacancy Analysis Report   I will provide you with an annual report concerning my rental real estate property, listing for each month my current tenants, the square footage each tenant rented, the rent each paid and each lease's expiration date as well as the square footage that remained vacant

D  SEC Reports   I will provide you with true and correct copies of all reports, notices or statements that I provide to the Securities and Exchange Commission, any securities exchange or my stockholders, owners or the holders of any material indebtedness as soon as available or at least within   days after issuance

E  Requested Information   I will provide you with any other information about my operations, financial affairs and condition within   days after your request

F  Additional Financial Statements Terms   Financial Information   Until the loan is repaid in full, Borrower and each Guarantor will be obligated on a continuing basis, to provide Bank with such financial information concerning the Borrower and each Guarantor as Bank may request from time to time

Within   120 days following the Borrower's fiscal year end, Borrower will deliver to Bank its Annual Tax Returns prepared according to generally accepted accounting principles

Each Guarantor will provide a verified personal financial statement and Annual Tax Returns to Bank annually

Borrower and each Guarantor will immediately inform Bank of any material change in the condition, financial or otherwise, of the Borrower or either Guarantor and of any actual or threatened litigation which might substantially affect the condition, financial or otherwise, of Borrower or either Guarantor

In addition to submitting financial statements to Bank, an authorized officer of Borrower will certify continuing compliance with all representations, warranties and covenants contained herein and will also certify that there is no violation or default with any other agreement or contract.

**7 COVENANTS** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

**A Participation** I consent to you participating or syndicating the Loan and sharing any information that you decide is necessary about me and the Loan with the other participants or syndicators.

**B Inspection** Following your written request, I will immediately pay for all one time and recurring out of pocket costs that are related to the inspection of my records, business or Property that secures the Loan. Upon reasonable notice, I will permit you or your agents to enter any of my premises and any location where my Property is located during regular business hours to do the following:

(1) You may inspect, audit, check, review and obtain copies from my books, records, journals, orders, receipts and any correspondence and other business related data.

(2) You may discuss my affairs, finances and business with any one who provides you with evidence that they are a creditor of mine, the sufficiency of which will be subject to your sole discretion.

(3) You may inspect my Property, audit for the use and disposition of the Property's proceeds and proceeds of proceeds, or do whatever you decide is necessary to preserve and protect the Property and your interest in the Property.

After prior notice to me, you may discuss my financial condition and business operations with my independent accountants, if any, or my chief financial officer and I may be present during these discussions. As long as the Loan is outstanding, I will direct all of my accountants and auditors to permit you to examine my records in their possession and to make copies of these records. You will use your best efforts to maintain the confidentiality of the information you or your agents obtain, except you may provide my regulator, if any, with required information about my financial condition, operation and business of that of my parent, subsidiaries or affiliates.

**C Business Requirements** I will preserve and maintain my present existence and good standing in the jurisdiction where I am organized and all of my rights, privileges and franchises. I will do all that is needed or required to continue my business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere I engage in business or activities or own, lease or locate my property. I will obtain your prior written consent before I cease my business or before I engage in any, new line of business that is materially different from my present business.

**D Compliance with Laws** I will not violate any laws, regulations, rules, orders, judgments or decrees applicable to me or my Property, except for those which I challenge in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should I lose. Laws include without limitation the Federal Fair Labor Standards Act requirements for producing goods, the federal Employee Retirement Income Security Act of 1974's requirements for the establishment, funding and management of qualified deferred compensation plans for employees' health and safety laws, environmental laws, tax laws, licensing and permit laws. On your request, I will provide you with written evidence that I have fully and timely paid my taxes, assessments and other governmental charges levied or imposed on me, my income or profits and my property. Taxes include without limitation sales taxes, use taxes, personal property taxes, documentary stamp taxes, recordation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes. I will adequately provide for the payment of those taxes, assessments and other charges that have accrued but are not yet due and payable.

**E New Organizations** I will obtain your written consent before organizing, merging into or consolidating with an entity, acquiring all or substantially all the assets of another, materially changing the legal structure, management, ownership or financial condition, or affecting any domestication or conversion of interest exchange.

**F Dealings with Insiders** I will not purchase, acquire or lease any property or services from, or sell, provide or lease any property or services to or permit any outstanding loans or credit extensions to, or otherwise deal with any Insiders except as required under contracts existing at the time I applied for the Loan and approved by you or as this Agreement otherwise permits. I will not change or breach these contracts existing at Loan application so as to cause an acceleration of or an increase in any payments due.

**G Other Debts** I will pay when due any and all other debts owed or guaranteed by me and will faithfully perform or comply with all the conditions and obligations imposed on me concerning the debt or guaranty.

**H Other Liabilities** I will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except, debt in existence on the date of this Agreement and fully disclosed to you, debt subordinated in payment to you on conditions and terms acceptable to you, accounts payable incurred in the ordinary course of my business and paid under customary trade terms or contracted in good faith with reserves satisfactory to you.

**I Notice to You** I will promptly notify you of any material change in my financial condition, of the occurrence of a default under the terms of this Agreement or any other Loan Document, or a default by me under any agreement between me and any third party which materially and adversely affects my property operations, financial condition or business.

**J Certification of No Default** On your request, my chief financial officer or my independent accountant will provide you with a written certification that to the best of their knowledge no event of default exists under the terms of this Agreement or the other Loan Documents, and that there exists no other action, condition or event which would give the giving of notice or lapse of time or both would constitute a default. As requested, my chief financial officer or my independent accountant will also provide you with computations demonstrating compliance with any financial covenants and ratios contained in this Agreement. If an action, condition or event of default does exist, the certificate must accurately and fully disclose the extent and nature of this action, condition or event and state what must be done to correct it.

**K Use of Loan Proceeds** will not permit the loan proceeds to be used to purchase, carry, reduce, or retire any loan originally incurred to purchase or carry any margin stock or otherwise cause the Loan to violate Federal Reserve Board Regulations U or X, or Section 8 of the Securities and Exchange Act of 1934 and its regulations, as amended.

**L Dispose of No Assets** Without your prior written consent or as the Loan Documents permit, I will not sell, lease, assign, transfer, dispose of or otherwise distribute all or substantially all of my assets to any person other than in the ordinary course of business, for the assets' depreciated book value or more.

**M No Other Liens** I will not create, permit or suffer any lien or encumbrance upon any of my properties for or by anyone, other than you except for nonconsensual liens imposed by law arising out of the ordinary course of business on obligations that are not overdue or which I am contesting in good faith after making appropriate reserves, valid purchase money security interests on personal property, or any other liens specifically agreed to by you in writing.

**N Guaranties** I will not guaranty or become liable in any way as surety, endorser (other than as endorser of negotiable instruments in the ordinary course of business) or accommodation endorser or otherwise for the debt or obligations of any other person or entity, except to you or as you otherwise specifically agree in writing.

**O No Default under Other Agreements** I will not allow to occur or to continue unremedied, any act, event or condition which constitutes a default, or which, with the passage of time or giving of notice, or both, would constitute a default under any agreement, document, instrument or undertaking to which I am a party or by which I may be bound.

**P Legal Disputes** I will promptly notify you in writing of any threatened or pending lawsuit, arbitration or other proceeding against me or any of my property, not identified in my financial statements, or that simply or together with other proceedings may, materially and adversely affect my property, operations, financial condition or business. I will use my best efforts to bring about a favorable and speedy result of any of these lawsuits, arbitrations or other proceedings.

**Q Other Notices** I will immediately provide you with any information that may materially and adversely affect my ability to perform this Agreement and of its anticipated effect.

R  No Change in Capital  I will not release, redeem, retire, purchase or otherwise acquire, directly or indirectly, any of my capital stock or other equity security or partnership interest, or make any change in my capital structure, except to the extent required by any agreements signed prior to this Agreement and disclosed to you or with your prior written consent

S  Loan Obligations  I will make full and timely payment of all principal and interest obligations  and comply with the other terms and agreements contained in this Agreement and in the other Loan Documents

T  Insurance  I will obtain and maintain insurance with insurers  in amounts and coverages that are acceptable to you and customary with industry practice  This may include without limitation insurance policies for public liability  fire  hazard and extended risk  workers compensation, and  at your request, business interruption and/or rent loss insurance  At your request  I will deliver to you certified copies of all of these insurance policies  binders or certificates  I will obtain and maintain a mortgagee or lender loss payee endorsement for  you when these endorsements are available  I will immediately notify  you of cancellation or termination of insurance  I will require all insurance policies to provide you with at least 10 days prior written notice to you of cancellation or modification  I consent to you using or disclosing information relative to any contract of insurance required by the Loan for the purpose of replacing this insurance  I also authorize my insurer and you to exchange all relevant information related to any contract of insurance required by any document executed as part of this Loan

U  Property Maintenance  I will keep all tangible and intangible property that I consider necessary or useful in my business in good working condition by making all needed repairs, replacements and improvements and by making all rental  lease or other payments due on this property

V  Property Loss  I will immediately notify  you, and the insurance company when appropriate  of any material casualty  loss or depreciation to the Property or to my other property that affects my business

W  Reserves  You may set aside and reserve Loan proceeds for Loan interest  fees and expenses  taxes  and insurance  I grant you a security interest in the reserves

No interest will accrue on any reserve Loan proceeds  Disbursement of reserves is disbursement of the Loan's proceeds  At my request, you will disburse the reserves for the purpose they were set aside for  as long as I am not in default under this Agreement  You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement

X  Deposit Accounts  I will maintain substantially all of my demand deposit/operating accounts with you

Y  Additional Taxes  I will pay all filing and recording costs and fees, including any recordation  documentary or transfer taxes or stamps  that are required to be paid with respect to this Loan and any Loan Documents

8  INSURANCE

A  Flood Insurance  Flood insurance is not required at this time  It may be required in the future should the property be included in an updated flood plain map  If required in the future  I may obtain flood insurance from anyone I want that is reasonably acceptable to you

9  DEFAULT  I will be in default if any of the following occur

A  Payments  I fail to make a payment in full when due

B  Insolvency or Bankruptcy  The death, dissolution or insolvency of, appointment of a receiver by or on behalf of  application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization  composition or debtor  relief law by or against me or any co signer  endorser  surety or guarantor of this Agreement or any other obligations I have with you

C  Business Termination  I merge, dissolve, reorganize  and my business or existence, or a partner or majority owner dies or is declared legally incompetent

D  Failure to Perform  I fail to perform any condition or to keep any promise or covenant of this Agreement

E  Other Documents  A default occurs under the terms of any other Loan Document

F  Other Agreements  I am in default on any other debt or agreement I have with you

G  Misrepresentation  I make any verbal or written statement or provide any financial information that is untrue, inaccurate  or conceals a material fact at the time it is made or provided

H  Judgment  I fail to satisfy or appeal any judgment against me

I  Forfeiture  The Property is used in a manner or for a purpose that threatens confiscation by a legal authority

J  Name Change  I change my name or assume an additional name without notifying you before making such a change

K  Property Transfer  I transfer all or a substantial part of my money or property

L  Property Value  You determine in good faith that the value of the Property has declined or is impaired

M  Material Change  Without first notifying you  there is a material change in my business  including ownership, management, and financial conditions

N  Insecurity  You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason

10  REMEDIES  After I default  you may at your option do any one or more of the following

A  Acceleration  You may make all or any part of the amount owing by the terms of the Loan immediately  due  If I am a debtor in a bankruptcy petition or in an application filed under section 5(a)(3) of the Securities Investor Protection Act  the Loan is automatically accelerated and immediately due and payable without notice or demand upon filing of the petition or application

B  Sources  You may use any and all remedies you have under state or federal law or in any Loan Document

C  Insurance Benefits  You may make a claim for any and all insurance benefits or refunds that may be available on my default

D  Payments Made On My Behalf  Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of the Loan and accrue interest at the highest post maturity interest rate

E  Termination  You may terminate my right to obtain advances and may refuse to make any further extensions of credit

F  Set-Off  You may use the right of set off  This means you may set off any amount due and payable under the terms of the Loan against any right I have to receive money from you

My right to receive money from you includes any deposit or share account balance I have with you, any money owed to me on an item presented to you or in your possession for collection or exchange, and any repurchase agreement or other non deposit obligation  "Any amount due and payable under the terms of he Loan" means the total amount to which you are entitled to demand payment under the terms of the Loan at the time you set off

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Loan  your right of set off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement

Your right of set off does not apply to an account or other obligation where my rights arise only in a representative capacity  It also does not apply to any Individual Retirement Account or other tax deferred retirement account

You will not be liable for the dishonor of any check when the dishonor occurs because you set off against any of my accounts  I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set off

Tres Amigos Land Co LLC
South Carolina Commercial Loan Agreement
SC/4xrdbailey00084600082430210123009Y                    ©1996 Bankers Systems  Inc , St Cloud  MN Express                    Page 4

G. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan. All fees and expenses will be secured by the Property I have granted to you. If any. In addition to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

12. APPLICABLE LAW. This Agreement is governed by the laws of South Carolina, the United States of America, and to the extent required by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

13. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS. My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of the Loan will bind my successors and assigns.

14. AMENDMENT, INTEGRATION AND SEVERABILITY. This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

15. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

16. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver and file any additional documents or certifications that you may consider necessary to perfect, continue and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

17. AGREEMENT TO ARBITRATE. You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute) except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Agreement and the other Loan Documents and proposed loans or extensions of credit that relate to this Agreement. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self help or similar remedies, including taking property or exercising other rights under the law, seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me, or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature or whether based on contract, tort or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Agreement, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Agreement or another writing.

18. WAIVER OF TRIAL FOR ARBITRATION. You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

19. SIGNATURES. By signing under seal, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

BORROWER

Three Amigos Land Co LLC

By _____ (Seal)
George M Blitch  Member

By _____ (Seal)
William D Degenhart  Member

By _____ (Seal)
Paul V Degenhart  Member

| LOAN NUMBER | LOAN NAME | ACCT NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 101 | Three Amigos Land Co LLC | 8800010884 | 05/11/09 | JJM |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $1,800,000.00 | Wall Street Journal Prime plus 1.000% | 5.500% | 08/11/09 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Commercial  Draw)
### RENEWAL NOTE

**DATE AND PARTIES**   The date of this Promissory Note (Note) is May 11  2009   The parties and their addresses are

**LENDER**
PLANTATION FEDERAL BANK
AS SUCCESSOR TO FIRST SAVERS BANK
835 South Main Street  Suite 300
Greenville  SC  29601
Telephone  (864) 477-2550

**BORROWER**
THREE AMIGOS LAND CO LLC
a South Carolina Limited Liability Company
8910 Two North Rd  Ste 302
Columbia  SC 28223

**1  DEFINITIONS**   As used in this Note  the terms have the following meanings

A  Pronouns   The pronouns "I " "me " and "my" refer to each Borrower signing this Note  individually and together   "You" and "Your" refer to the Lender

B  Note   No e refers to this document  and any extensions  renewals, modifications and substitutions of this Note

C  Loan   Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications  security agreements  disclosures or notes  and this Note

D  Loan Documents   Loan Documents refer to all the documents executed as a part of or in connection with the Loan

E  Property   Property is any property  real  personal or intangible  that secures my performance of the obligat ons of this Loan

F  Percent   Rates and rate change limitations are expressed as annualized percentages

**2  RENEWAL**   This Note is a renewal of the following described note

| Note Date | Note Number | Note Amount |
|---|---|---|
| December 22  2006 | # 8800010884  101 | $1,800,000.00 |

I have requested that this note listed in the table above  be renewed   The remaining balance of the note listed in the table above is $1,773,558.26

**3  PROMISE TO PAY**   For value received  I promise to pay you or your order  at your address  or at such other location as you may designate  amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $1,800,000.00 (Principal)  plus interest from the date of disbursement  on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan

All advances made will be made subject to all other terms and conditions of the Loan

**4  INTEREST**   Interest will accrue on the unpaid Principal balance of this Note at the rate of 5 500 percent (Interest Rate) until May 11  2009  after which time it may change as described in the Va iable Rate subsection

A  Post Maturity Interest   After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time  until paid in full

B  Maximum Interest Amount   Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law  whichever is greater   Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance   Any remainder will be refunded to me

C  Statutory Authority   The amount assessed or collected on this Note is authorized by the South Carolina usury laws under S C  Code Ann  §§ 37 3 605  37 3 106 and 37-10-101 et seq

D  Accrual   Interest accrues using an Actual/360 days counting method

E  Variable Rate   The Interest Rate may change during the term of this transaction

(1) Index   Beginning with the first Change Date  the Interest Rate will be based on the following index   the base rate on corporate loans posted by at least 75% of the 30 largest U S  banks known as the Wall Street Journal U S  Prime Rate

The Current Index is the most recent index figure available on each Change Date   You do not guaranty by selecting this index  or the margin  that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers   If this index is no longer available  you will substitute a similar index   You will give me notice of your choice

(2) Change Date   Each date on which the Interest Rate may change is called a Change Date   The Interest Rate may change May 12  2009 and daily thereafter

[3] Calculation Of Change   On each Change Date you will calculate the Interest Rate which will be the Current Index plus 1.000 percent   The result of this calculation will be rounded to the nearest .001 percent   Subject to any limitations, this will be the Interest Rate until the next Change Date   The new interest Rate will become effective on each Change Date   The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note

[4] Limitations   The Interest Rate changes are subject to the following limitations

(a) Lifetime   The Interest Rate will never be less than 5.500 percent

[5] Effect Of Variable Rate   A change in the Interest Rate will have the following effect on the payments   The amount of scheduled payments and the amount of the final payment will change

**5  REMEDIAL CHARGES**   In addition to interest or other finance charges  I agree that I will pay these additional fees based on my method and pattern of payment  Additional remedial charges may be described elsewhere in this Note

A  Late Charge   If a payment is more than 15 days late  I will be charged 5.000 percent of the Amount of Payment   I will pay this late charge promptly but only once for each late payment

**6  GOVERNING AGREEMENT**   This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan  as modified  amended or supplemented  The Commercial Loan Agreement states the terms and conditions of this Note  including the terms and conditions under which the maturity of this Note may be accelerated  When I sign this Note  I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement

**7  PAYMENT**   I agree to pay this Note in installments of accrued interest beginning June 11  2008  and then on the 11th day of each month thereafter   I agree to pay the entire unpaid Principal and any accrued but unpaid interest on August 11  2008

Payments will be rounded to the nearest $.01   With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf   Payments scheduled to be paid on the 29th  30th or 31st day of a month that contains no such day will  instead  be made on the last day of such month

Each payment I make on this Note will be applied first to interest that is due then to principal that is due  and finally to any charges that I owe other than principal and interest   If you and I agree to a different application of payments  we will describe our agreement on this Note   You may change how payments are applied in your sole discretion without notice to me   The actual amount of my final payment will depend on my payment record

**8  PREPAYMENT**   I may prepay this Loan in full or in part at any time   Any partial prepayment will not excuse any later scheduled payments until I pay in full

**9  LOAN PURPOSE**   This is a business purpose loan transaction

**10  SECURITY**   The Loan is secured by previously executed  separate security instruments described as follows

| Description | Date |
| --- | --- |
| Mortgage  Security Agreement and Fixture Financing Statement  UCC 1  Assignment of Contracts Contract Rights Leases Rents and Profits | December 22  2005 |

**11  DUE ON SALE OR ENCUMBRANCE**   You may  at your option  declare the entire balance of this Note to be immediately due and payable upon the creation of or contract for the creation of  any lien, encumbrance  transfer or sale of all or any part of the Property   This right is subject to the restrictions imposed by federal law (12 C F R  591)  as applicable

**12  WAIVERS AND CONSENT**   To the extent not prohibited by law  I waive protest  presentment for payment  demand  notice of acceleration or intent to accelerate and notice of dishonor

A  Additional Waivers By Borrower   In addition  I and any party to this Note and Loan  to the extent permitted by law  consent to certain actions you may take  and generally waive defenses that may be available based on these actions or based on the status of a party to this Note

[1] You may renew or extend payments on this Note  regardless of the number of such renewals or extensions

[2] You may release any Borrower  endorser  guarantor  surety  accommodation maker or any other co-signer

[3] You may release  substitute or impair any Property securing this Note

[4] You  or any institution participating in this Note  may invoke your right of set off

[5] You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales  repurchases or participations

[6] I agree that any of us signing this Note as a Borrower  is authorized to modify the terms of this Note or any instrument securing  guarantying or relating to this Note

[7] I agree that you may inform any party who guarantees this Loan of any Loan accommodations  renewals  extensions  modifications  substitutions or future advances

B  No Waiver By Lender   Your course of dealing  or your forbearance from  or delay in  the exercise of any of your rights  remedies, privileges or right to insist upon any strict performance of any provisions contained in this Note  or any other Loan Document  shall not be construed as a waiver by you  unless any such waiver is in writing and is signed by you

**13  COMMISSIONS**   I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products  and may earn such fees on other services that I buy through you or your affiliate

**14  APPLICABLE LAW**   This Note is governed by the laws of South Carolina  the United States of America  and to the extent required  by the laws of the jurisdiction where the Property is located  except to the extent such state laws are preempted by federal law

**15  JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS**   My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it   You may sue me alone  or anyone else who is obligated on the Loan  or any number of us together  to collect the Loan   Extending the Loan or new obligations under the Loan  will not affect my duty under the Loan and I will still be obligated to pay the Loan   This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives  successors  heirs and assigns

**16  AMENDMENT  INTEGRATION AND SEVERABILITY**   This Note may not be amended or modified by oral agreement   No amendment or modification of this Note is effective unless made in writing and executed by you and me   This Note and the other Loan Documents are the complete and final expression of the agreement   If any provision of this Note is unenforceable  then the unenforceable provision will be severed and the remaining provisions will still be enforceable

No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007

17  INTERPRETATION   Whenever used, the singular includes the plural and, the plural includes the singular  The section headings are for convenience only and are not to be used to interpret or define the terms of this Note

18  NOTICE  FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS   Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section  or to any other address designated in writing   Notice to one Borrower will be deemed to be notice to all Borrowers   I will inform you in writing of any change in my name, address or other application information   I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property  Time is of the essence

19  CREDIT INFORMATION   I agree to supply you with whatever information you reasonably request   You will make requests for this information without undue frequency and will give me reasonable time in which to supply the information

20  ERRORS AND OMISSIONS   I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me   I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days

21  AGREEMENT TO ARBITRATE   You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing   For purposes of this section this Transaction includes this Note and the other Loan Documents and proposed loans or extensions of credit that relate to this Note   You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration   You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration   You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration

You or I may, whether or not any arbitration has begun, pursue any self help or similar remedies, including taking property or exercising other rights under the law, seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me, or foreclose against any property by any method or take legal action to recover any property   Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self help remedies will not constitute a waiver of the right to compel arbitration

The arbitrator will determine whether a Dispute is arbitrable   A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort or any other matter at law or in equity   The arbitrator may consolidate any Dispute with any related disputes   Claims or counterclaims in question not arising out of this Transaction   Any court having jurisdiction may enter a judgment or decree on the arbitrator's award   The judgment or decree will be enforced as any other judgment or decree

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce   The United States Arbitration Act will govern the interpretation and enforcement of this section

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing

22  WAIVER OF TRIAL FOR ARBITRATION   You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation   If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration

23  SIGNATURES   By signing under seal, I agree to the terms contained in this Note   I also acknowledge receipt of a copy of this Note

BORROWER

Three Amigos Land Co LLC

by _____ (Seal)
George M Lee III, Member

By _____ (Seal)
William J Degenhart, Member

By _____
Paul V Degenhart, Member

No present or future agreement securing any other debt I owe you will secure the payment of this Loan II, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007

**17 INTERPRETATION** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note

**18 NOTICE FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name address or other application information. I agree to sign deliver and file any additional documents or certifications that you may consider necessary to perfect continue and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence

**19 CREDIT INFORMATION** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency and will give me reasonable time in which to supply the information

**20 ERRORS AND OMISSIONS** I agree, if requested by you to fully cooperate in the correction if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days

**21 AGREEMENT TO ARBITRATE** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute) except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract tort or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing

**22 WAIVER OF TRIAL FOR ARBITRATION** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration

**23 SIGNATURES** By signing under seal I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note

BORROWER

Three Amigos Land Co LLC

By _____ (Seal)
George W Lee III Member

By _____ (Seal)
William J Degenhart Member

By _____ (Seal)
Paul V Degenhart Member

# GUARANTY
(Continuing Debt - Unlimited)

DATE AND PARTIES   The date of this Guaranty is September 23, 2009   The parties and their addresses are

LENDER
PLANTATION FEDERAL BANK
AS SUCCESSOR TO FIRST SAVERS BANK
935 South Main Street  Suite 300
Greenville  SC  29601
Telephone  (864) 477-2560

BORROWER
THREE AMIGOS LAND CO LLC
a South Carolina Limited Liability Company
8910 Two Notch Rd  Ste 302
Columbia, SC 29223

GUARANTOR
WILLIAM J DEGENHART
440 A Moon River Ct
Savannah  GA 31406

1  DEFINITIONS   As used in this Guaranty  the terms have the following meanings

A  Pronouns  The pronouns "I"  "me"  and "my" refer to all persons or entities signing this Guaranty  individually and together   "You" and "your" refer to the Lender

B  Note   "Note" refers to the document that evidences the Borrower's indebtedness  and any extensions  renewals, modifications and substitutions of the Note

C  Property   "Property" means any property, real  personal or intangible  that secures performance of the obligations of the Note  Debt  or this Guaranty

2  SPECIFIC AND FUTURE DEBT GUARANTY   For good and valuable consideration  the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt  or to induce you to extend and/or maintain credit  or grant any other financial accommodation  I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt  of every type  purpose and description that the Borrower either individually  among all or a portion of themselves  or with others  may now or at any time in the future owe you  including, but not limited to the following described Debt(s) including without limitation, all principal  accrued interest, attorneys  fees and collection costs, when allowed by law  that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower

A promissory note or other agreement  No  101, dated September 23, 2009  from Three Amigos Land Co LLC (Borrower) to you  in the amount of $1,650,000 00

In addition  Debt refers to debts  liabilities and obligations of the Borrower (including  but not limited to  amounts agreed to be paid under the terms of  any notes or agreements securing the payment of any debt  loan  liability or obligation  overdrafts, letters of credit  guaranties  advances  for taxes  insurance  repairs and storage  and all extensions  renewals  refinancings and modifications of these debts) whether now existing or created or incurred in the future  due or to become due  or absolute  or contingent  including obligations and duties arising from the terms of all documents prepared or submitted for the transaction  such as applications  security agreements  disclosures  and the Note

You may  without notice  apply this Guaranty to such Debt of the Borrower as you may select from time to time

3  EXTENSIONS   I consent to all renewals  extensions  modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals  extensions, modifications or substitutions

A  Future Advances   I waive notice of and consent to any and all future advances made to the Borrower by you

4  UNCONDITIONAL LIABILITY   I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower  against any other maker  surety, guarantor or endorser of the Debt or against any Property  You may sue me alone  or anyone else who is obligated on this Guaranty, or any number of us together  to collect the Debt   My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in the Guaranty or any instrument executed in connection with the Debt   My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality  invalidity or unenforceability of any notes or agreements evidencing the Debt  the violation of any applicable usury laws  forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower  I will remain obligated to pay on this Guaranty  even if any other person who is obligated to pay the Debt  including the Borrower  has such obligation discharged in bankruptcy  foreclosure  or otherwise discharged by law

5  BANKRUPTCY   If a bankruptcy petition should at any time be filed by or against the Borrower  the maturity of the Debt  so far as my liability is concerned  shall be accelerated and the Debt shall be immediately payable by me   I acknowledge and agree that this Guaranty  and the Debt secured hereby  will remain in full force and effect at all times  notwithstanding any action or undertakings by or against, you or against any Property  in connection with any obligation in any proceeding  in the United States Bankruptcy Courts   Such action or undertaking includes  without limitation  valuation of Property  election of remedies  or imposition of secured or unsecured claim status upon claims for you  pursuant to the United States Bankruptcy Code  as amended  In the event that any payment of principal  or interest received and paid by any other guarantor, borrower  surety  endorser or co-maker is deemed  by final order of a court of competent jurisdiction  to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished

6  REVOCATION   I agree that this is an absolute and unconditional Guaranty  I agree that this Guaranty will remain binding on me  whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence  Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals  extensions, refinancings  and modifications of such Debts  I agree that if any other person signing this Guaranty provides a notice of revocation to you  I will still be obligated under the Guaranty until I provide such a notice of revocation to you   If any other person signing this Guaranty dies or is declared incompetent  such fact will not affect my obligations under this Guaranty

7  PROPERTY   I agree that any Property may be assigned  exchanged  released in whole or in part or substituted without notice to me and without defeating  discharging or diminishing my liability  My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty  You are under no duty to preserve or protect any Property until you are in actual or constructive

William J Degenhart
South Carolina Guaranty
SC/4Xdbavis/00118B00006032020092209Y

Wolters Kluwer Financial Services ©1996  2009 Bankers Systems™

Page 1

possession  For purposes of this paragraph  you will only be in "actual" possession when you have physical  immediate and exclusive control over the Property and have accepted such control in writing  Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property

**8  DEFAULT**  I will be in default if any of the following occur

**A  Payments**  I fail to make a payment in full when due

**B  Insolvency or Bankruptcy**  The death  dissolution or insolvency of  appointment of a receiver by or on behalf of  application of any debtor relief law  the assignment for the benefit of creditors by or on behalf of  the voluntary or involuntary termination of existence by or the commencement of any proceeding under any present or future federal or state insolvency  bankruptcy  reorganization  composition or debtor relief law by or against me  Borrower  or any co-signer  endorser  surety or guarantor of this Guaranty or any Debt

**C  Death or Incompetency**  I die or am declared legally incompetent

**D  Failure to Perform**  I fail to perform any condition or to keep any promise or covenant of this Guaranty

**E  Other Documents**  A default occurs under the terms of any other document relating to the Debt

**F  Other Agreements**  I am in default on any other debt or agreement I have with you

**G  Misrepresentation**  I make any verbal or written statement or provide any financial information that is untrue  inaccurate  or conceals a material fact at the time it is made or provided

**H  Judgment**  I fail to satisfy or appeal any judgment against me

**I  Forfeiture**  The Property is used in a manner or for a purpose that threatens confiscation by a legal authority

**J  Name Change**  I change my name or assume an additional name without notifying you before making such a change

**K  Property Transfer**  I transfer all or a substantial part of my money or property

**L  Property Value**  You determine in good faith that the value of the Property has declined or is impaired

**M  Insecurity**  You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason

**9  WAIVERS AND CONSENT**  To the extent not prohibited by law  I waive protest, presentment for payment, demand  notice of acceleration  notice of intent to accelerate and notice of dishonor

**A  Additional Waivers**  In addition  to the extent permitted by law  I consent to certain actions you may take  and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions

(2) You may release any Borrower  endorser, guarantor  surety  accommodation maker or any other co-signer

(3) You may release  substitute or impair any Property

(4) You  or any institution participating in the Debt, may revoke your right of set-off

(5) You may enter into any sales  repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales  repurchases or participations

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing  guarantying or relating to the Debt

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me  regardless of any such valuation  or actual amounts received by you arising from the sale of such Property

(8) I agree to consent to any waiver granted the Borrower and agree that any delay or lack of diligence in the enforcement of the Debt  or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability

(9) I agree to waive reliance on any anti deficiency statutes  through subrogation or otherwise  and such statutes in no way affect or impair my liability  In addition  until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation  contribution  reimbursement, indemnification  exoneration  and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property

Any Guarantor who is an "insider " as contemplated by the United States Bankruptcy Code  11 U S C  101  as amended  makes these waivers permanently  (An insider includes  among others  a director  officer  partner  or other person in control of the Borrower  a person or an entity that is a co partner with the Borrower  an entity in which the Borrower is a general partner  director  officer or other person in control or a close relative of any of these other persons )  Any Guarantor who  is not an insider  makes these waivers until all Debt is fully repaid

**B  No Waiver By Lender**  Your course of dealing, or your forbearance from  or delay in  the exercise of any of your rights  remedies  privileges or right to insist upon  my strict  performance of any provisions contained in the Debt instruments  shall not be construed as a waiver by you  unless you  unless any such waiver is in writing and is signed by you

**C  Waiver of Claims**  I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith

**10  REMEDIES**  After the Borrower or I default  you may at your option do any one or more of the following

**A  Acceleration**  You may make all or any part of the amount owing by the terms of this Guaranty immediately due

**B  Sources**  You may use any and all remedies you have under state or federal law or in any documents relating to the Debt

**C  Insurance Benefits**  You may make a claim for any and all insurance benefits or refunds that may be available on default

**D  Payments Made on the Borrower s Behalf**  Amounts advanced on the Borrower s behalf will be immediately due and may be added to the balance owing under the Debt

**E  Set-Off**  You may use the right of set off  This means you may set off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you

My right to receive money from you includes any deposit or share account balance I have with you  any money owed to me on an item presented to you or in your possession for collection or exchange  and any repurchase agreement or other non-deposit obligation  "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set off

Subject to any other written contract  if my right to receive money from you is also owned by someone who has not agreed to pay the Debt  your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement

Your right of set off does not apply to an account or other obligation where my rights arise only in a representative capacity  It also does not apply to any Individual Retirement Account or other tax deferred retirement account

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts  I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off

F. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guaranteed hereby and from any loan and/or financial accommodations resulting in the creation of other Debt guaranteed hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time in my opinion the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of South Carolina, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change to my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver and file any additional documents or certifications that you may consider necessary to perfect, continue and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Guaranty and any other document relating to the Debt and proposed loans or extensions of credit that relate to this Guaranty. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning the Debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing the Debt underlying any Dispute before, during or after any arbitration. You may also enforce the Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law, seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me, or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of the Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Guaranty, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Guaranty or another writing.

**21. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**22. SIGNATURES.** By signing under seal, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR

William J Degenhart                     (Seal)
Individually